**BREMNER et al. v. MASON CITY & C. L. R. CO.**

No. 867.

District Court, D. Delaware.

April 1, 1931.

Clarence A. Southerland (of Ward & Gray), of Wilmington, Del., for all plaintiffs.

Wm. F. Peter, of Chicago, Ill., for Chicago, R. I. & P. Ry. Co.

M. L. Bluhm, of Chicago, Ill., for Chicago, M., St. P. & P. R. Co.

Frank H. Towner, of Chicago, Ill., for Chicago Great Western R. Co.

Nye F. Morehouse, of Chicago, Ill., for Chicago & N. W. Ry. Co.

C. W. Wright, of Minneapolis, Minn., for receiver of Minneapolis & St. L. R. Co.

Robert H. Richards, of Wilmington, Del., Wm. E. Lamb and T. K. Humphrey, both of Chicago, Ill., and Earl Smith, of Mason City, Iowa, for defendant.

NIELDS, District Judge.

This proceeding has been instituted by W. H. Bremner, receiver of the Minneapolis & St. Louis Railroad Company, Chicago & North Western Railway Company, Chicago Great Western Railroad Company, Chicago, Milwaukee, St. Paul & Pacific Railroad Company, and Chicago, Rock Island & Pacific Railway Company, five trunk-line railroad companies, against Mason City & Clear Lake Railroad Company, a corporation of Delaware, engaged in operating a line about ten miles long of railway from Clear Lake, Iowa, to Mason City, Iowa, with about five miles of street railways in those two towns. The bill alleges that the plaintiffs operate lines of railway in interstate commerce extending in and through the state of Iowa and adjoining states, with railway lines converging in the city of Mason City, Iowa, and for more than twenty years have maintained in the city of Mason City large terminals with side tracks, industry tracks, switch tracks, and railway facilities suitable, convenient, and reasonably adequate to serve, and have served, all the industries in that territory, including the territory known generally as the Brick & Tile Field of Mason City, Iowa, in which there are a number of brick and tile plants operated under the name of Mason City Brick & Tile Company. The bill further charges that the defendant company within the last sixty days has built certain extensions of its main line into some of these brick and tile plants, without having first obtained from the Interstate Commerce Commission a certificate that the present or future convenience and necessity required such construction, and has declared its purpose and intention of building like extension into all of such plants, and cause the plaintiffs to be excluded wholly or in part therefrom.

The matter is before the court on plaintiff's motion for a preliminary injunction, and has been heard on verified bill of complaint, affidavits, and exhibits. The plaintiffs ask that the defendant be temporarily restrained from constructing, or attempting to construct, any other or further extension of its tracks, other than now constructed, into any of the brick and tile plants or other industries within the territory described in the bill of complaint as the Mason City Brick & Tile Field, unless and until they shall first have obtained from the Interstate Commerce Commission a certificate that the public convenience and necessity require the construction and/or operation of such extension of the defendant's line of railway, as provided in the Interstate Commerce Act as amended; and from disconnecting, taking up, or removing, or in any manner interfering with, any of the tracks, lines of railway, or other property operated by plaintiffs or any of them; and that the court on final hearing make the injunction permanent.

The defendant attacks the right of the plaintiffs to maintain this suit, denies that it has constructed, or has any intention of constructing, an "extension" of its line of railway, and declares that it is merely constructing a "spur, industrial or side track"; and further that, even if it be found that the work being done and to be done amounts to an "extension of its line of railway," the defendant is a street, suburban, and interurban railway company not operated as a part of a general steam railroad system of transportation, and therefore is not required to obtain from the Interstate Commerce Commission a certificate of public convenience and necessity.

The plaintiffs rely on paragraphs (18) and (20) of section 1 of the Interstate Commerce Act, 49 USCA § 1 (18) and (20). The material provisions of paragraph (18) are:

"No carrier by railroad subject to this chapter shall undertake the extension of its line of railroad, * * * or shall acquire or operate any line of railroad, or extension thereof, * * * unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line of railroad. * * *"

Paragraph (20) provides:

"Any construction, operation, or abandonment contrary to the provisions of

* * * paragraph (18) * * * may be enjoined by any court of competent jurisdiction at the suit of * * * any party in interest."

The defendant, on the other hand, depends for its sufficient protection on paragraph (22) of section 1 of the same act (49 USCA § 1 (22), which provides:

"The authority of the commission conferred by paragraphs (18) to (21), both inclusive, shall not extend to the construction * * * of spur, industrial, team, switching, or side tracks, located or to be located wholly within one State, or of street, suburban, or interurban electric railways, which are not operated as a part or parts of a general steam railroad system of transportation."

The first defense ▮ be considered is that of laches. Laches is not, like limitation, a mere lapse of time, but is properly a question of the inequity of permitting a claim to be enforced because of some change in the condition or relations of the parties. Peirce-Smith Converter Co. v. United Verde Copper Co. (D. C.) 293 F. 108. The defendant contends that the construction complained of was begun November 5, 1930, and that shortly after that time representatives of all five of the plaintiffs were notified of that fact. On the other hand, the general counsel of one of the plaintiff railroads wrote a letter to an attorney representing the defendant railroad company on November 20, 1930, in which it was stated: "We entertain no doubt whatever but that the Interstate Commerce Commission would hold your company subject to its jurisdiction in respect to the proposed extensions and would expect your Company to submit an application for a certificate of public convenience and necessity before either constructing or operating the additional trackage. * * * In our opinion your road cannot safely proceed without the certificate. * * *" The record does not disclose what, if any, reply was made to this letter. The defendant did not go to the Commission. It is unnecessary to refer in detail to the evidence on this point. I think the plaintiffs were within their rights in waiting a reasonable length of time to see whether the defendant intended to apply to the Interstate Commerce Commission for a certificate of convenience. While delay in bringing suit may and properly should limit the extent of the preliminary injunction sought, as, for instance, operation of lines constructed and in operation at the time of bringing suit, such delay as has occurred in this case is not suf-

ficient to bar plaintiffs' right to all relief by way of preliminary injunction. Further, I am in full accord with the views expressed by the court in Lancaster v. Gulf, C. & S. F. Ry. Co. (D. C.) 298 F. 488, 490: "The very structure of the act shows that injunction will lie against the operation of the track, as well as against its construction, so that it is not possible for any person to claim a right against injunction springing out of the delay in questioning the construction of a forbidden track, since operation over the track is forbidden equally with construction." I think the facts do not sustain the defense of laches.

■ The defendant also urges that the plaintiffs can have no relief in this suit, for the reason that it does not appear that any one of them is a "party in interest" within the provisions of paragraph (20), for the reason that no one of the plaintiffs has an absolute right to demand that the tile company ship its freight over the lines of a particular company, and, no individual plaintiff having any such right, collectively they can have no such right; and, further, that the right of each of the plaintiffs to enter these premises and take any freight is, under a license with the tile company, terminable by either party after due notice. It also asserts that the tile company had the right to route its freight over any one or more of the lines of the plaintiffs serving its plant, or over the line of the defendant, and even suggests it may use none of those lines, but ship wholly by truck or other means of transportation, if it saw fit. It may be true that the defendant has certain legal rights in this connection, but it had not exercised such rights up to the time of the filing of the bill in this case, and we are not dealing with a state of facts that might arise. These tile plants have been in operation for many years, and were directly served by the rail lines of the plaintiff railroad companies, various of the plaintiffs having rails to one or more of the plants, and in the aggregate all plants were served by the five plaintiff companies. It is fair to assume that such traffic will continue to be hauled either by the lines of the plaintiffs or the proposed line of the defendant. To the extent that such traffic is hauled by other than the lines of the plaintiffs, it will result in a corresponding loss of revenue to the plaintiffs. A railroad company with which a proposed extension by another company will come in competition is a party in interest within the meaning of the act in question, and may maintain a suit to enjoin construction of such extension in violation of the act. Detroit & M. Ry. Co. v. Boyne City, G. & A. R. Co. (D. C.) 286 F. 540. Any other conclusion would nullify this provision of the act.

■ While the rail lines of the defendant are situated wholly within the territorial limits of the state of Iowa, it appears from the evidence, and, in fact, is conceded by the defendant, that it handles interstate freight. It is therefore a common carrier engaged in interstate commerce. Dahnke-Walker Co. v. Bondurant, 257 U. S. 282, 290, 42 S. Ct. 106, 66 L. Ed. 239; United States v. Union Stock Yard & Transit Co. of Chicago, 226 U. S. 286, 304, 33 S. Ct. 83, 57 L. Ed. 226.

This brings me to the two real questions involved in this controversy: First, whether or not the new tracks already constructed and proposed to be constructed by the defendant railway company are "extensions" of its line within the meaning of paragraphs (18) to (22) of section 1 of the Interstate Commerce Act, 49 USCA § 1 (18) to (22), or whether they are separate industrial, team, switching, or side tracks, within the meaning of that act; and, secondly, whether or not the defendant is a street, suburban, or interurban electric railway not operated as a part of a general steam railroad system of transportation.

These questions are not free from difficulty. While the first, whether the proposed new tracks of the defendant come within the provisions of paragraph (18), might be decided on this record with some degree of satisfaction, I think the second cannot. It involves questions of importance not only to the litigants, but, in view of the advance in the use of electricity to replace steam as motive power in connection with the operation of railway lines, to the railway industry in general. Moreover, the affidavits with respect to material points, both from the standpoint of the plaintiffs and defendant, are not satisfactory. At the argument, counsel for the defendant called attention to three cases before the Interstate Commerce Commission —the governmental body whose duty it is primarily to pass upon these questions—which he claimed dealt directly with the question of the meaning of the exemptions in paragraph (22), so far as they relate to interurban electric railways being subject to the act, and holding that such railways were, under the facts of those cases, exempt from the operation of the act. At the same time counsel for the plaintiffs called attention to a like or greater number of cases before that Commission, arriving under the facts of those cases,

at an opposite conclusion. Counsel went further, and conceded that they knew of no judicial interpretation of the words of this section. The importance of the questions involved and the necessity for a careful balancing of the facts with the principles of law applicable thereto lead me to the conclusion that it will be promotive of justice to postpone a decision on these points until final hearing, after full opportunity for the examination and cross-examination of witnesses.

■ Little need be said on the balance of convenience. Various tracks of certain of the plaintiffs have been disconnected and damaged, and there are other tracks in respect to which the same wrongful action is threatened. The revenue from traffic which will continue to move over the rails of the plaintiffs which are still in place, but which are threatened with removal, would be lost to the plaintiffs, even though the court should compel restoration of such connections on the entry of final decree. A preliminary injunction will have the effect of maintaining the status quo. A denial of such injunction will result in immediate and unquestioned loss to the plaintiffs, whereas the defendant will not suffer any substantial loss by awaiting the outcome of this litigation upon final hearing, and its loss, if any, is susceptible of indemnification by bond. The defendant was free to make application to the Interstate Commerce Commission for permission to build what has been called an extension and have the Commission pass upon the question whether such new construction is in fact an extension of its line within the meaning of the act, and also whether as an interurban railway it came within the provisions of the act. The defendant has not seen fit to do so. Instead of so doing, it proceeded with the construction of the new tracks. The plaintiffs, however, had no right to initiate such a proceeding before the Commission.

The motion for a preliminary injunction will be granted.