### VERGAS v. SHAUGHNESSY.

United States District Court
S. D. New York.
April 24, 1951.

Carol King and Blanch Freedman, New York City, for plaintiff.

Irving H. Saypol, U. S. Atty., New York City, William Sexton, Asst. U. S. Atty., New York City, of counsel, for defendant.

WEINFELD, District Judge.

This action is brought under the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., to review (1) an order of deportation issued by the Commissioner of Immigration and Naturalization; (2) the denial by the Board of Immigration Appeals of plaintiff's application for suspension of the said order of deportation; and (3) for

judgment declaring the proceedings which resulted in the order of deportation and all action thereunder null and void.

The matter is before the Court on plaintiff's application for a temporary injunction pending a trial of the issues, to enjoin the District Director of Immigration and Naturalization at the Port of New York from arresting him or otherwise taking action under the order of deportation or any warrant issued thereunder.

The plaintiff is an alien of Greek nationality who entered this country as a seaman on November 4th, 1931, and has resided here continuously ever since. On December 9th, 1939 he was arrested on a warrant charging him with remaining in the United States beyond the time permitted by law and was admitted to bail. A hearing was held, following which an order and warrant of deportation was issued on July 3rd, 1940. On July 17th, 1945 an attorney representing the plaintiff appeared before the Board of Immigration Appeals and applied for the privilege of voluntary departure in lieu of deportation pursuant to section 19(c)(1) of the Act of February 5, 1917, 8 U.S.C.A. § 155(c)(1), and the additional privilege of pre-examination, and also requested that the warrant of deportation be withdrawn. This application was granted, and on July 20th, 1945 an order was entered which directed (1) that the outstanding order and warrant of deportation be withdrawn and (2) that the proceeding be reopened to permit plaintiff to apply for voluntary departure and pre-examination. On October 15th, 1945, plaintiff filed written Form I–255 for such voluntary departure and pre-examination, as required by 8 C.F.R. 150.6(g). Exhibit 2, hearing, November 14th, 1947.

The hearings for such discretionary relief were not held until November 14th and December 22nd, 1947. At the first hearing plaintiff testified that it was his intention when he deserted his vessel to remain here permanently. The presiding inspector, pursuant to Federal Regulations, thereupon lodged an additional charge that at the time of entry he was an immigrant not in possession of a valid visa. 8 C.F.R. 150.6(1).

On December 29th, 1947 the inspector found that the plaintiff was subject to deportation on the charge made at the hearing but not on the original charge, and recommended deportation. He also reported adversely on plaintiff's application for voluntary departure and pre-examination.

The inspector's recommendations were upheld by the Commissioner and an order entered thereon on January 5th, 1949 and a warrant issued directing plaintiff's deportation to Greece. An appeal was taken therefrom to the Board of Immigration Appeals. The appeal was not heard until May 15th, 1949, when plaintiff's counsel upon the oral argument applied for a suspension of the order of deportation under Section 19(c)(2) of the Immigration Act of 1917, as amended. 8 U.S.C.A. § 155(c)(2). The amendment which became effective July 1st, 1948, and so was not available to plaintiff at the time of the hearings in November and December 1947, enlarged the class of those eligible for suspension of deportation to include aliens who had resided continuously in the United States for seven years or more.

The Board on June 24th, 1949 denied the request for relief under Section 19(c)(2) and also dismissed the appeal from Commissioner's order.

On September 28th, 1950 a warrant of deportation was served upon plaintiff and he was ordered to surrender himself at Ellis Island on November 1st, 1950 for immediate departure to Greece. The present suit was then instituted against the District Director of Immigration and Naturalization at the Port of New York.

The plaintiff challenges the order of deportation as invalid on the grounds that (1) the hearings of November 14th and December 22nd, 1947 did not comply with the provisions of the Administrative Procedure Act then in force and effect in that judicial and prosecutive functions were vested in the same person; (2) that the denial of his application for suspension of deportation under Section 155(c)(2) was an illegal abuse of discretionary power; further, that he was denied a hearing thereon in violation of due process; (3)

the deportation of plaintiff to Greece might well subject him to serious physical persecution and is, therefore, a violation of the Federal Constitution and the provisions of 8 U.S.C.A. § 156, as last amended by Section 23 of the Internal Security Act of 1950.

■ The government urges various objections to the plaintiff's motion, amongst others, that a writ of habeas corpus is the sole judicial remedy available to the plaintiff. That one resisting an order of deportation is no longer confined to habeas corpus but may maintain a declaratory judgment suit after having exhausted administrative remedies is no longer open to question. However, the maintenance of such an action is not absolute but is dependent upon "the existence of a justiciable case or controversy". McGrath v. Kristensen, 340 U.S. 162, 71 S.Ct. 224.

Plaintiff is seeking an injunction pendente lite, which, if granted, would stay all proceedings for deportation until a trial of the action has been had. Section 10 of the Administrative Procedure Act authorizes this relief where it is necessary to prevent irreparable injury. It may be conceded that if the order of deportation is null and void an arrest on a warrant issued thereunder is irreparable injury and it is no answer to suggest that a party subject himself to arrest and then seek redress by means of the ancient writ of habeas corpus. On the other hand, if the order of deportation and the proceedings on which it is based are valid there can be no claim of irreparable injury.

■ A stay is not to be granted as a matter of course or as a mere incident to an action for declaratory judgment. It is a cardinal principle of equity jurisprudence that a preliminary injunction shall not issue in a doubtful case. Hall Signal Co. v. General Railway Signal Co., 2 Cir., 153 F. 907. The discretionary power of the Court may be exercised in support of the drastic remedy of an injunction pendente lite only when it appears with reasonable certainty that plaintiff is entitled to the ultimate relief for which the action is brought. This requires an analysis of plaintiff's contentions.

Plaintiff first challenges the order of deportation for lack of compliance with the Administrative Procedure Act, effective September 11th, 1946. The latter Act has been held applicable to deportation proceedings. Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616. It may be conceded that the same person acted as presiding officer and examiner at the hearings conducted on November 14th, 1947 and December 22nd, 1947. However, Section 12 of the Act provides " * * no procedural requirement shall be mandatory as to any agency proceeding initiated prior to the effective date of such requirement." Hence, the basic question is whether the Act was applicable at the time of the hearings herein.

It is not necessary for the purposes of this motion to determine whether the proceeding had been initiated by the issuance of the warrant on the original charge on December 9th, 1939. The issue may be narrowed by limiting consideration to July 20th, 1945, the date of the so-called reopening, and November 14th, 1947, when the first hearing was had.

The plaintiff contends that the latter date controls and consequently compliance with the Administrative Procedure Act was mandatory. The record shows that on July 20th, 1945 the proceeding was reopened—or as it appears to this Court—continued at the plaintiff's request to permit him to apply for voluntary departure and pre-examination, at which time the original warrant of deportation was withdrawn. This is confirmed by the formal written request of the plaintiff for such relief, dated October 15th, 1945.

■ The conclusion is compelled that the proceeding had been initiated by plaintiff's own action prior to the effective date of the Act in causing the withdrawal of the warrant to enable consideration of his application for discretionary relief of voluntary departure, and under the circumstances was a pending proceeding. The fact that the first hearing took place more than a year subsequent to the effective date of the Act does not alter the situation. A parallel may be drawn when an

action is commenced by the filing of a complaint or the service of a summons followed by a trial after joinder of issue. The date of the commencement or initiation of an action is not obliterated by the period intervening to the date of trial.

United States ex rel. Harisiades v. Shaughnessy. District Director of Immigration and Naturalization, 2 Cir., 187 F.2d 137, recently decided, is analogous in many respects and appears controlling. The plaintiff seeks to distinguish it by urging that in the instant case a new charge was lodged against him on November 14th, 1947, differing from that set forth in the warrant of arrest dated December 9th, 1939. It appears to this Court that here both charges were based upon the same conduct of the plaintiff, to wit, his act in entering into this country. Originally he was charged with remaining longer than permitted by law; subsequently, that at the time of entry he was not in possession of a valid immigration visa. The latter charge was based upon his admission at the hearing of November 14th, 1947 that at the time of entry he intended to remain here permanently. Substantially the same facts were involved and the "same conduct" test of the Harisiades case is met.

Even if plaintiff's position that the Administrative Procedure Act was applicable were upheld because the date of the hearing controls the "initiation" of the proceeding, it would afford him little relief. Following the determination of Wong Yang Sung v. McGrath, supra, the Act was amended. Public Law 843, 81st Congress, Second Session, 64 Stat. 1044, enacted September 27th, 1950, provides: "Proceedings under law relating to the exclusion or expulsion of aliens shall hereafter be without regard to the provisions of sections 5, 7, and 8 of the Administrative Procedure Act (5 U.S.C. 1004, 1006, 1007)." Thus, the plaintiff's position on this question is academic.

Plaintiff's next attack is with respect to the refusal by the Board of Immigration Appeals to grant his application for suspension of the order of deportation made under 8 U.S.C.A. § 155(c) (2). Here he contends, first, that he was denied a hearing on that application and, second, that the denial of relief was an arbitrary abuse of discretion.

We consider the first objection—that plaintiff was not afforded an agency hearing of his application. As has already been noted, the discretionary relief of suspension of deportation only became available to plaintiff after July 1st, 1948, when Congress enlarged the area of permissible relief to include those who "resided continuously in the United States for seven years or more * * *." At no time did plaintiff file application Form I-55 for the newly granted discretionary relief as required by the rules and regulations of the Service. 8 C.F.R. 150.6(g). Instead, he preferred to rely upon the record of his hearing on the application for voluntary departure under 8 U.S.C. A. § 155(c) (1), the denial of which was the subject of his appeal to the Board of Immigration Appeals.

On March 15th, 1949, his counsel, appearing before the Board on oral argument in support of the foregoing appeal, requested that plaintiff be permitted to adjust his status under the recent amendment. Consequently, it is true that no separate hearing was held by the Board on the suspension application—none was requested and, as noted, no application pursuant to adopted procedures had been made.

The Board "after carefully examining all the evidence of record" found that the plaintiff at the hearing had admitted that he was an active and trusted member and an officer of a branch of the International Workers Order, listed by the Attorney General as subversive. Testimony on plaintiff's activities in the organization had been taken at the hearing held on November 14th, 1947, and was referred to in the order of the Commissioner denying his application for voluntary departure and pre-examination. It was also the subject of oral argument made by plaintiff's attorney before the Board of Immigration Appeals.

The final ruling of the Board was based upon examination of all the evidence contained in the transcript record of the

hearing as well as the argument and presentation made by his attorney both in support of the appeal from the denial of voluntary departure and the motion for discretionary relief of suspension of deportation. This accorded plaintiff due process. National Labor Relations Board v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381; National Labor Relations Board v. Stocker Mfg. Co., 3 Cir., 185 F.2d 451; Kavadias v. Cross, D.C., 82 F.Supp. 716, 719.

The latter case is on all fours. The deportation order had been granted, following which petitioner married a citizen of the United States and thereafter applied to the Board of Immigration Appeals for a suspension order under Section 155(c)(2) on the ground that his deportation would result in serious economic detriment to his wife. The Board denied his motion for a reopening and the request for discretionary relief. His claim was that the refusal of the Board to afford him a hearing on the issue of the economic detriment which might result to his wife from his deportation was arbitrary and contrary to law. This plea was overruled by District Judge Swygert, who held: "* * * emphasis must be placed upon the fact that a deportation hearing had been afforded the petitioner before he applied for a suspension under § 155(c). Of course, he was not in a position in 1941, when the hearing was conducted, to apply for such a suspension. * * * his deportation status had already been fixed in accordance with existing administrative procedure long before he became entitled to make an application for a suspension. It would thus appear that the regulations governing the procedure to be followed by the Immigration Service Inspector in deportation proceedings, as regards suspensions under § 155(c), could not have and need not have been observed in this case. Indeed, the petitioner himself recognized this by the filing of his motion with the Board of Immigration Appeals to 'reopen and reconsider' his deportation order."

This view was adopted and approved by the Court of Appeals, although the matter was reversed on other grounds, Kavadias

v. Cross, 7 Cir., 177 F.2d 497, and by the Court of Appeals for the Third Circuit, in United States ex rel. Zabadlija v. Garfinkel, 173 F.2d 222.

Finally, United States ex rel. Adel v. Shaughnessy, District Director of Immigration and Naturalization, 2 Cir., 183 F.2d 371, 372, is controlling. There the relator applied for suspension of an order of deportation also based upon the July 1st, 1948 amendment to Section 155(c), which was not in effect when an order for her deportation had been granted. The Board denied her request and she applied for a writ of habeas corpus, which was dismissed. Her contention that she was entitled to a hearing on the application was overruled. "Relator argues that she was entitled, after the statute's amendment, to a new hearing * * *. Assuming, arguendo, that ordinarily such a person would have been entitled to such a hearing, relator had no such right because the Board could properly rely on the findings of the Inspector made in 1946. Those findings were supported by sufficient evidence. Consequently, the Board could properly base its discretionary determination on those findings. The courts cannot review the exercise of such discretion; they can interfere only when there has been a clear abuse of discretion or a clear failure to exercise discretion."

There remains the contention that the denial of relief was arbitrary and an abuse of discretion. Here it is claimed that the Commissioner in the one instance and the Board in the other in denying plaintiff's applications for statutory relief rested their action upon the sole ground that plaintiff admitted he was a member and an officer of a lodge of the International Workers Order, listed by the Attorney General as subversive. Plaintiff urges that the organization was so listed in connection with the President's Loyalty Program and was intended to be restricted in application only to employees or prospective employees of the government and that a ruling that mere membership is a bar to suspension of deportation, especially when no hearing has been had as to whether or not the organiza-

tion is in fact subversive, constitutes an abuse of discretion.

The stated position of plaintiff contains two assumptions not borne out by the record: (1) That the sole basis of denial of relief was membership in the organization and (2) that the Attorney General did not exercise his discretion.

Plaintiff conceded that he was an active member and officer of the organization and at the original hearing was questioned by the inspector as to its activities. The Board also found that he occupied a position of trust "thereby indicating that he has established himself as a reliable and faithful supporter of the program sponsored and espoused by the International Workers Order. This latter organization, after appropriate investigation and determination by the Attorney General, has been found to be an affiliate of an organization that is considered to be subversive and which seeks to alter the form of government of the United States by unconstitutional means."

Dispositive of plaintiff's contention on this question is United States ex rel. Kaloudis v. Shaughnessy, 2 Cir., 180 F.2d 489, 490, where a request for suspension of deportation was denied on the ground that relator was a member of the very organization of which plaintiff herein was an active officer. The Court of Appeals assumed, arguendo, that he had been denied a hearing as to whether the activities of the Order were in any way inimical to the interests of the United States and for the purposes of decision further disregarded the Board's statement that its decision was based upon "all of the evidence upon record" and assumed that the denial of relator's application was based exclusively on his membership in that organization. Nonetheless, the Court held that there was neither denial of due process nor a right of review of the Attorney General's exercise of discretion.

■ Moreover, the denial of discretionary relief was not circumscribed by the issue of activity in the International Workers Order but was based upon consideration of "all of the evidence of record." In addition to the seven year residence requirement, it is essential that applicant prove his good moral character for the preceding five years before relief may be granted. 8 U.S.C.A. § 155(c); 8 C.F.R. 150.10(2). On this issue, in considering the application for voluntary departure, the presiding inspector found that plaintiff had failed to establish affirmatively that he met this requirement.

This Court has noted the comment made by plaintiff's attorney that United States ex rel. Kaloudis v. Shaughnessy, supra, as well as United States ex rel. Adel v. Shaughnessy, District Director of Immigration and Naturalization, supra, have been overruled by McGrath v. Kristensen, supra, but does not agree with this conclusion. The latter case turned on the question of the status of the alien—whether he was a resident or nonresident—the determination of which governed the Attorney General's power to exercise discretion for suspension of deportation. The end result of a favorable ruling would mean that with his status clarified, plaintiff was entitled to the exercise by the Attorney General of his discretionary power. Here it appears there was an exercise of discretion by the Attorney General.

■ Finally, plaintiff urges that his deportation would subject him to physical persecution and that he is entitled to relief under Section 23 of the Internal Security Act of 1950, 8 U.S.C.A. § 156, as amended; Public Law 831, 81st Congress, Second Session, Chapter 1024. It does not appear that application has been made to the Attorney General for relief on this ground and the absence thereof affords no basis for the granting of a temporary injunction.

The foregoing conclusion makes it unnecessary to pass upon the government's further contention that the Attorney General is a necessary and indispensable party.

The Court has considered all the points urged in support of the application and finds there are too many elements of doubt that plaintiff will ultimately prevail. Under all the circumstances it would be an improvident exercise of discretion to grant a preliminary injunction.

The motion is denied.

Settle order on notice.