James William **WEBB, Jr.,** and Andre Webb, minors, by James R. Webb, their parent and next friend, et al., Plaintiffs,

**v.**

**BOARD OF EDUCATION OF the CITY OF CHICAGO** and Benjamin C. Willis, as General Superintendent of Public Schools of the City of Chicago, Defendants.

**No. 63 C 1895.**

United States District Court
N. D. Illinois, E. D.
Nov. 18, 1963.

James D. Montgomery, Paul B. Zuber, Raymond E. Harth, Chicago, Ill., for plaintiffs.

James W. Coffey, Chicago, Ill., Thomas M. Thomas and Reuben L. Hedlund, Chicago, Ill., for defendants.

MAROVITZ, District Judge.

This class action has been brought by the parents of several Negro children presently enrolled in the public schools of Chicago, Illinois. Plaintiffs ask upon their own behalf, and also upon the behalf of others similarly situated, that

the Defendants, the Board of Education of the City of Chicago, and Dr. Benjamin C. Willis, Superintendent of Schools, be enjoined pendente lite from maintaining and requiring attendance at racially segregated public schools.

Plaintiffs contend that the Board, and Dr. Willis, have deliberately created and fostered a segregated school system in Chicago, in violation of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. More specifically, Plaintiffs allege that Defendants have gerrymandered the boundaries of school districts, adopted a permissive transfer plan for white students, and constructed additional schools in Negro areas, while failing to utilize vacant seats in White classrooms. The Plaintiffs have submitted a detailed affidavit from Attorney Paul Zuber of New York City, along with numerous exhibits, in support of their motion. Mr. Zuber has set forth data, attempting to demonstrate the predominance of one race or the other in many Chicago schools. He then presents statistical surveys tending to show that overcrowding, use of branch schools and mobile classrooms, and new building activity, are more prevalent in Negro residential areas than in those inhabited by both races, or White persons alone.

In response, the Defendants have submitted to this Court, the affidavit of Defendant Willis. Dr. Willis defends the School Board's actions with evidence that such procedures have been necessary to efficiently administer the school system. Dr. Willis contends that the large influx of Negroes into areas containing low cost public housing and other factors have dictated the Board's construction and districting policy, as it attempts to eliminate double shifts and overcrowding. In his affidavit Dr. Willis has categorically denied that he or his office has ever been motivated to maintain or perpetuate racially segregated schools. On Page 18 of Dr. Willis' affidavit, he states:

"I categorically deny that I or my office has ever been motivated to maintain or perpetuate racially segregated schools, nor are we maintaining and perpetuating racially segregated schools, nor are we committed to policies which result in racially segregated schools. The unsupported statements made on Page 39 of Plaintiffs' affidavit are totally false."

Plaintiffs have come before the bench today, asking this Court to issue a preliminary injunction. They ask that Defendants be enjoined from requiring Plaintiffs and their class to attend segregated schools, from maintaining a segregated school system, from requiring Plaintiffs and their class to attend overcrowded public schools while seats lie empty in classrooms serving White residential areas, and from any other acts which deny to Plaintiffs the equal protection of the laws.

It is not necessary for the Court to determine at this time the respective merits of these contentions. We need only note that substantial questions of fact are raised as to whether the segregation complained of is the result of an active and intentional design of the Defendants. The United States Court of Appeals for the Seventh Circuit, on October 31, 1963, upheld the constitutionality of the "neighborhood school policy" in Bell v. School City of Gary, Indiana, 324 F.2d 209.

"We agree with the argument of the defendants stated as 'there is no affirmative U. S. Constitutional duty to change innocently arrived at school attendance districts by the mere facts that shifts in population either increase or decrease the percentage of either Negro or white pupils.' "

The Court continued, quoting from the District Court opinion of Judge Beamer:

"Nevertheless, I have seen nothing in the many cases dealing with the segregation problem which leads me to believe that the law requires that a school system developed on the neighborhood school plan, honestly

and conscientiously constructed with no intention or purpose to segregate the races, must be destroyed or abandoned because the resulting effect is to have a racial imbalance in certain schools where the district is populated almost entirely by Negroes or whites. * * *" D.C., 213 F. Supp. 819.

It would therefore appear that the only basis for equitable relief in this case must be found in the form of an intentional design on Defendants' behalf to maintain segregation in the public schools. De facto segregation resulting from the implementation of a neighborhood school policy, or residential segregation is not enough.

▇▇ A temporary injunction, especially one altering the status quo, should not be issued unless the Plaintiffs demonstrate that there is a great probability they will prevail. Plaintiffs must also demonstrate that their injuries would be irreparable if the temporary injunction were not issued. The purpose of a temporary injunction is to prevent the destruction of Plaintiffs' rights until such time as a hearing upon the merits may be held. In Corica v. Ragen, 140 F.2d 496 (1944), the United States Court of Appeals for the Seventh Circuit, quoting from Russell v. Farley, 105 U.S. 433, 26 L.Ed. 1060, said,

"A court of chancery should ' * * * regard the comparative injury which would be sustained by the defendant, if an injunction were granted, and by the complainant, if it were refused. * * * And if the legal right is doubtful, either in point of law or of fact, the court is always reluctant to take a course which may result in material injury to either party; * * *' * * *

"Taking all the circumstances into consideration, including the fact that the only grounds for granting the injunction were to be found in the unsupported, contradicted and impeached affidavit of plaintiff, we do not think it can be said that plaintiff had established his right to the relief sought so clearly as to be reasonably free from doubt, so as to warrant an injunction prior to trial."

▇ This Court is aware of the irreparable harm which could result from segregation under the sanction of law. Brown v. Board of Education of Topeka, Shawnee County, Kan, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. However, school segregation resulting from residential segregation, alone, is not a violation of any right over which this Court can take cognizance. In Bell v. School City of Gary, Indiana, supra, the Court held that there is no Constitutional right to be integrated with persons of other Races. The Constitution only forbids States from *actively* pursuing a course of enforced segregation.

Further, irreparable harm is, by itself, insufficient to warrant the granting of a preliminary injunction. In Vergas v. Shaughnessy, 97 F.Supp. 335 (D.C. N.Y.1951), an application for an injunction which, if granted, would have prevented temporarily Plaintiff's deportation, was denied, notwithstanding the danger of irreparable harm. The Court, in refusing the injunction, said, "It is a cardinal principle of equity jurisprudence that a preliminary injunction shall not issue in a doubtful case."

Branche v. Board of Education, 204 F. Supp. 150 (E.D.N.Y.1962) dealt with a neighborhood school policy in Hempstead, N. Y. Defendant's motion for summary judgment was denied, but the case was subsequently suspended. Branche can be read to say that the mere act of requiring attendance in a segregated school, determined by numbers, constitutes State action under the Fourteenth Amendment. That is, that all schools having a high percentage of one race are presumptively unconstitutional. To take this construction would seem illogical, as residential segregation may very often lead to a predominantly Negro school district, even when that district is drawn

with reasonable boundaries. A more intelligent approach to Branche would lead to the conclusion that passive gerrymandering may create an unconstitutionally segregated school. However, there must be some affirmative action of "segregating", to violate the Fourteenth Amendment, even if it is only the passive refusal to redistrict unreasonable boundaries. Mere residential segregation is not enough.

The case of Henry v. Greenville Airport Commission, 4 Cir., 284 F.2d 631, cited by Plaintiffs, is not in point, here. In that case, the existence of separate waiting rooms was established and uncontradicted. Since that was the only question of fact involved, the relief was correctly granted. In the case at bar, however, many facts upon which Plaintiffs' right to relief depends are in doubt. Therefore, the status quo should not be upset until these facts are determined by the Court.

Denied.