**BROTHERHOOD OF RAILWAY AND AIRLINE CLERKS, CONSOLIDATED SYSTEM BOARD OF ADJUSTMENT 46; Brotherhood of Railway Carmen, Burlington Northern Joint Protective Board; Allied Services Division, Brotherhood of Railway and Airline Clerks; Brotherhood of Railway Signalmen; General Committee of Adjustment, United Transportation Union No. 386, Burlington Northern Inc.; and Yardmasters of America, Plaintiffs,**

v.

**BURLINGTON NORTHERN INC. and United States of America, Defendants.**

Civ. No. 4–81–224.

United States District Court, D. Minnesota, Fourth Division.

May 14, 1981.

■

---

Patrick J. Foley, DeParcq, Anderson, Perl, Hunegs & Rudquist, Minneapolis, Minn., for plaintiffs.

Frank S. Farrell and Donald E. Engle, Burlington Northern Inc., St. Paul, Minn., and Martin M. Lucente, Sidley & Austin, Chicago, Ill. (of counsel), for defendant Burlington Northern Inc.

Thomas K. Berg, U. S. Atty., and Francis X. Hermann, Asst. U.S. Atty., Minneapolis, Minn., and Richard A. Allen, Gen. Counsel and Lawrence H. Richmond, Atty., I. C. C., Washington, D.C. (of counsel), for defendant United States of America.

## MEMORANDUM INCORPORATING FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER DENYING A PRELIMINARY INJUNCTION

MacLAUGHLIN, District Judge.

This matter is before the Court on plaintiffs' motion for a preliminary injunction. This memorandum constitutes the Court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a).

### FACTUAL BACKGROUND

Plaintiffs are a number of railroad unions who have collective bargaining agreements with defendant Burlington Northern Inc. (BN). BN is a common carrier which is a Delaware corporation, having its principal place of business in St. Paul. The United States is styled as a nominal defendant.

Plaintiffs request the issuance of a preliminary injunction barring the BN from transforming itself into a holding company[1] "until and unless" the Interstate Commerce Commission (ICC) issues an order allowing the transformation. Plaintiffs' Motion for Preliminary Injunction, ¶ 1. Plaintiffs also request that the Court bar the BN from transferring any assets from itself to any other corporation or holding

---

1. The method of transformation is somewhat complicated. The BN has created two companies in Delaware, the Burlington Northern Holding Company (Holding Company), and a wholly owned subsidiary of the Holding Company named Burlington Northern Transportation Company (BNTCO). The scheme is to have BNTCO merge into BN. BN shareholders would exchange their stock for stock in the holding company and the BNTCO stock would be cancelled. The net effect would be that the BN would become a wholly owned subsidiary of the Holding Company. The BN's name would then be changed to Burlington Northern Railroad Company and the Holding Company would change its name to Burlington Northern Inc.

company or issuing any securities unless the transfer or issuance is approved by the ICC.

On January 26, 1981, the Board of Directors of the BN authorized its management to proceed with the formation of a holding company. On January 28, Richard Bressler, president of the BN, wrote to Darius Gaskins, Jr., chairman of the ICC, and to other ICC members informing them of that decision. The letter stated that the formation of such a holding company did not require ICC approval.

On April 14, 1981, the BN informed its stockholders that the holding company proposal would be voted on at the company's annual meeting scheduled for May 14. The proxy statement sent to the shareholders explained the holding company concept in some detail. Briefly, it indicated that as a common carrier the company in its present form may issue securities only with the approval of the ICC and only for a carrier purpose. A holding company would not be subject to such restrictions and could more easily finance non-transportation business activities. The goal of the transformation is to enhance the development of non-transportation assets, such as timber, coal, oil and gas.

On April 30, 1981, plaintiffs filed a petition with the ICC asking the Commission to find that the BN transformation must be approved by the ICC and requesting that the transaction be disapproved. The petition stated that "[t]he Commission should act, and it should do so before the shareholders' meeting on May 14, 1981." Petition at 54.[2] Plaintiffs filed this suit the same day and have moved for a preliminary injunction.

Plaintiffs' approach is two-fold. First, they contend that the Court is empowered to and should issue a preliminary injunction under the merger, consolidation, acquisition, and securities provisions of the Interstate Commerce Act. Second, they claim that the Court is empowered to and should issue a preliminary injunction under a specific provision of the Act, 49 U.S.C. § 11705, on the ground that the BN transformation violates the terms of a previous ICC order.[3] The Court has determined that with respect to the first approach, the Court lacks jurisdiction to enter a preliminary injunction. With regard to § 11705, the Court has determined that a preliminary injunction should not issue because plaintiffs have not fulfilled the prerequisites established in *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109 (8th Cir. 1981) (*en banc*).

## I.

Plaintiffs contend that ICC approval for the BN transformation is required under several provisions within Subchapter III of Chapter 113 of the Interstate Commerce Act: 49 U.S.C. §§ 11343, 11344, and 11348, which cover mergers, acquisitions of control, and consolidations. Plaintiffs also rely on three other sections of the Act: § 11301, dealing with the issuance of securities, and §§ 11361 and 11362, dealing with changes in securities that have already been issued.

■ At the outset, it is important to understand the nature of the relief plaintiffs request. Plaintiffs request that the Court bar defendant from forming any holding company "until and unless" the Interstate Commerce Commission shall have issued an order allowing the transaction. In essence, the "until and unless" language urges the Court to make a determination that the BN transformation is one subject to the above-stated statutory provisions and, if consummated without ICC approval, violates the Interstate Commerce Act. The Court believes that such relief would encroach upon the ICC's exclusive jurisdiction.

The first words of Subchapter III, within which are found §§ 11343, 11344, and 11348, are "[t]he authority of the Interstate Commerce Commission under this subchapter is exclusive." 49 U.S.C. § 11341(a). The ICC

---

**2.** At oral argument counsel for the United States informed the Court that the ICC plans some type of preliminary determination on plaintiffs' petition on or before May 22, 1981.

**3.** This second ground was not urged in plaintiffs' memoranda to the Court, and § 11705 is not mentioned in plaintiffs' complaint. It was first posited at oral argument.

also has exclusive jurisdiction with respect to §§ 11301, 11361, and 11362, *see* 49 U.S.C. §§ 11301(b)(1) and 11361(a). The enforcement provisions for all of these sections, found at 49 U.S.C. §§ 11701 and 11702, indicate the exclusivity of the ICC's power.[4]

Consequently, the issuance of an injunction "until and unless" the ICC approves the BN transformation would be contrary to Congress' intent as evidenced by the statutory language. *See B.F. Goodrich Co. v. Northwest Industries, Inc.*, 424 F.2d 1349, 1355 (3d Cir.), *cert. denied*, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970) (Congress placed complete initial control of acquisitions involving federally regulated carriers in the ICC); *Chicago South Shore & South Bend Railroad v. Monon Railroad*, 235 F.Supp. 984, 986 (N.D.Ill.1964) (Congress' intent was to create exclusive jurisdiction in the ICC in carrier control matters).

Plaintiffs' fallback position is that the Court should enjoin the BN transformation until the ICC takes some action, one way or the other, on plaintiffs' petition. However, if the Court enjoins the transformation pending ICC action, it necessarily must make some type of assessment as to whether or not plaintiffs will prevail before the ICC. This assessment is precisely the inquiry which is within the ICC's exclusive competence.

*Chicago South Shore & South Bend Railroad v. Monon Railroad*, 235 F.Supp. 984 (N.D.Ill.1964), considered this very issue. Plaintiff brought suit to enjoin defendant from making further purchases of plaintiff's stock, "until such time as the Interstate Commerce Commission (ICC) may determine the legality of said acquisition." 235 F.Supp. at 985. Plaintiff argued that such action would not interfere with the primary jurisdiction of the ICC, but would

merely prevent irreparable injury until the ICC fully considered plaintiff's petition.

The court refused to grant such relief. It noted that a court, in considering whether to issue a preliminary injunction, must decide whether plaintiff has a significant chance of winning on the merits. Such an inquiry would inject the Court into an area within the ICC's primary jurisdiction. The opinion cited *Arrow Transportation Co. v. Southern Railway Co.*, 372 U.S. 658, 669–70, 83 S.Ct. 984, 990, 10 L.Ed.2d 52 (1963) to the effect that

> [a] court's disposition of an application for injunctive relief would seem to require at least some consideration of the applicant's claim that the carrier's proposed rates are unreasonable. But such consideration would create the hazard of forbidden judicial intrusion into the administrative domain.

The Court is confident that the ICC will issue a prompt determination in this matter, as indicated by counsel for the United States, justifying the Court's deference to the Commission's exclusive jurisdiction.[5]

## II.

Plaintiffs' position that the BN transformation violates the ICC's order in *Burlington Northern, Inc.—Control and Merger—St. Louis-San Francisco Railway Company*, 360 I.C.C. 788 (1980) (the "Frisco" order) remains to be considered. Jurisdiction arguably exists under 49 U.S.C. § 11705(a), which provides in part that

> [a] person injured because a carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission . . . does not obey an order of the Commission . . . may bring a civil action to enforce that order under this subsection.

---

4. Section 11701 provides that the ICC may begin an investigation on its own initiative or on complaint, but does not provide that a court may in the first instance determine whether a transaction would violate the Act. Section 11702 provides that the ICC may bring a civil action to enjoin a carrier from violating the Act, but makes no mention of a private party

starting an action or of any Court authority to enjoin a transaction.

5. The ICC apparently has the authority to grant quick, temporary relief when necessary. *See Amoskeag Co. v. Interstate Commerce Commission*, 590 F.2d 388 (1st Cir. 1979) (cease and desist order entered seven days after tender offer).

Without deciding whether the Court has jurisdiction to enjoin the BN transformation under 49 U.S.C. § 11705(a), it is clear that plaintiffs have not met the prerequisites for the issuance of preliminary relief. The U.S. Court of Appeals for the Eighth Circuit elaborated on the factors to be considered in deciding whether to issue a preliminary injunction in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*). The Court must consider: (1) the threat of irreparable harm to the plaintiff; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest.

■ In this case, the second and fourth factors cut neither for nor against the issuance of an injunction. However, the first and third factors militate against the relief requested by plaintiffs.

Plaintiffs' basic fear is that the creation of a holding company eventually would lead to the transfer of certain of the railroad's non-transportation assets to holding company subsidiaries, thereby weakening the railroad's financial position. Allegedly this would endanger the "complex and large wage guarantees due from the defendant railroad to the plaintiff's [sic] union members as a result of the various mergers resulting in the present Burlington Northern Inc." Complaint, ¶ 5.

If the Court issued an injunction based on this fear it would act as a seer or soothsayer. Plaintiffs have provided no evidence as to whether asset transfers will occur or when they will occur. Even if such transfers some day come to pass, the Court has no data to substantiate plaintiffs' premonitions that such transfers would render the railroad impotent to fulfill its obligations to its employees.

The Court is especially reticent to find irreparable harm given that plaintiffs have petitioned the ICC for relief. If the BN transformation contradicts the Frisco order, the ICC has the power to make an appropriate supplemental order if cause exists, 49 U.S.C. § 11351. In its Frisco order, the ICC reserved the right to make supplemental securities decisions under 49 U.S.C. § 11301(d)(1). 360 I.C.C. at 965. Consequently, plaintiffs have not at this time shown that a preliminary injunction is necessary to prevent irreparable harm.

With respect to plaintiffs' chances of prevailing on the merits, the Court has doubts as to the strength of plaintiffs' § 11705 claim. The only specific mention of the holding company concept in the Frisco decision that plaintiffs have brought to the Court's attention reads as follows:

The ability of a railroad to satisfactorily provide transportation services and to adequately rehabilitate its plant and equipment can be affected by its corporate structure. Those in a position to control a railroad's actions can divert the carrier's income, property, and other assets for nonrail purposes. This opportunity exists to a significant degree when a parent holding company controls the railroad.

BN will not be in a position to form a holding company for many years due to bond indenture restrictions. Therefore, the opportunity for a diversion of assets to other sources does not presently exist. Also, the current management of BN appears to be fully dedicated to railroad operations.

This statement is found in Appendix D to the ICC decision, 360 I.C.C. at 992–93. Apparently the ICC did not provide as a condition for approval of the Frisco merger that the BN could not form a holding company, for the holding company concept is mentioned neither in the discussion of conditions, 360 I.C.C. at 950–60, nor in the formal findings and order, 360 I.C.C. at 960–61, 965–67. That the ICC theorized that the BN would not be in a position to form a holding company for "many years" may or may not have been one consideration that led that Commission to approve the merger, but the Court does not believe that mere changes in the factual circumstances underpinning an ICC decision constitute disobedience of the order under § 11705.

Therefore, because plaintiffs have not demonstrated a real threat of irreparable harm or a significant probability that they will succeed on the merits of their claim under § 11705, a preliminary injunction would be inappropriate.

*ORDER*

Accordingly,

IT IS ORDERED that plaintiffs' motion for a preliminary injunction be and hereby is denied.