The **B. F. GOODRICH COMPANY,**
Plaintiff,

v.

**NORTHWEST INDUSTRIES, INC.,**
Defendant,
and
Interstate Commerce Commission,
Intervening Defendant.

**Civ. A. No. 3752.**

United States District Court
D. Delaware.
Aug. 11, 1969.

54

Blaine T. Phillips, Wilmington, Del., and Morton Moskin, New York City, of counsel, for plaintiff.

H. Albert Young, and Edward Maxwell, Wilmington, Del., and Edward K. Wheeler, and Robert G. Seaks, Washington, D. C., of counsel, for defendant.

Norman E. Levine, Asst. U. S. Atty., Wilmington, Del., and Fritz R. Kahn, Washington, D. C., for intervening defendant.

## OPINION

STEEL, District Judge.

The complaint, purportedly filed under sections 1337 and 2201 of the Judicial Code, 28 U.S.C. §§ 1337 and 2201, prays for a determination by this Court that it would be unlawful under section 5 (4) of the Interstate Commerce Act, 49 U.S.C. § 5(4) for the defendant, Northwest Industries, Inc., (hereafter "Industries") to acquire control of the plaintiff, B. F. Goodrich Company (hereafter "Goodrich"), and through it, Motor Freight Corporation without first obtaining the authorization and approval of the Interstate Commerce Commission. The complaint also seeks an injunction, both permanent and temporary, under section 2202 of the Judicial Code, 28 U.S.C. § 2202, prohibiting such acquisition of control, until authorization therefor (thus far not obtained) has been secured from the Interstate Commerce Commission, pursuant to section 5(2) (b) of the Interstate Commerce Act, 49 U.S.C. § 5(2) (b).

The Interstate Commerce Commission has intervened in the action, and has filed a motion to dismiss the complaint on the grounds that this Court lacks jurisdiction over the subject matter and the complaint fails to state a claim upon which relief can be granted.

As a basis for the declaratory and injunctive relief sought the complaint alleges:

Goodrich owns all of the outstanding shares of Motor Freight Corporation and so controls it. Motor Freight is a motor common carrier subject to Part II of the Interstate Commerce Act and operates under certificates of convenience and necessity issued by the Commission. Goodrich also owns 100 shares of Industries. Industries owns, among other things, approximately 99 per cent of the voting stock of Chicago & North Western Railway Co. (hereafter "North Western") and controls it. North Western is a common carrier by rail subject to Part I of the Act.

Industries has made a tender offer to stockholders of Goodrich to acquire their common stock in Goodrich. The offer has been extended to August 11, 1969. Industries has placed no limit on the number of shares sought to be acquired. As of April 17, 1969, Industries owned approximately 700,000 shares which it purchased in the open market. Industries has stated it intends to acquire more than 50 per cent of the outstanding common stock of Goodrich and to obtain effective control of it. By obtaining control of Goodrich, Industries will obtain control of another carrier, Motor Freight.

The complaint alleges that it will be unlawful under section 5(4) of the Act for Industries to obtain control of Goodrich and Motor Freight without prior approval of the Commission under section 5(2) (b). It asserts that Industries has not done this, and publicly has indicated it is not required and does not intend to do it. The complaint further alleges that Industries has announced that simultaneously with its acquisition of control of Goodrich, Industries will sell the stock of Motor Freight or place the control of Motor Freight with an independent voting trustee. This, according to the complaint, would not prevent the proposed transaction, without prior Commission approval and authorization, from violating section 5(4) of the Act.

Finally, the complaint avers that an actual controversy exists between Industries and Goodrich as to whether the transaction referred to, if carried out without the approval and authorization of the Commission, will violate section 5(4) of the Act, and that if it is so carried out will cause irreparable damage to Goodrich for which no adequate remedy at law exists.

The case is before the Court upon plaintiff's motion for a preliminary injunction as prayed for in the complaint. Also before the Court is the Commis-

sion's motion to dismiss. Affidavits for and against the motions have been filed and two documents were received in evidence at the hearing on August 6, 1969.

*Jurisdiction*

Industries and the Commission both assert that the resolution of the issue presented by the complaint reposes exclusively with the Commission and this Court, therefore, is without jurisdiction to decide it. Counsel for Goodrich and for the Commission admit that they know of no decision in which a District Court has entertained an action by a private litigant to secure relief for a violation of the Interstate Commerce Act, except in instances where the Act expressly authorizes such judicial action. These statutory authorizations are specified in Chicago, South Shore & South Bend Railroad v. Monon Railroad, 235 F.Supp. 984, 986 (N.D.Ill.1964). Furthermore, in the *Monon* case, the Court held that a District Court was without jurisdiction to grant any relief in a case virtually identical with that at bar and dismissed the action.

Plaintiff argues that jurisdiction should be upheld on the basis of Pennsylvania Motor Truck Ass'n v. Port of Philadelphia Marine Terminal Ass'n, 183 F.Supp. 910 (E.D.Pa.1960). An analysis of that case and the provisions of the Act itself demonstrates its inapplicability to the instant case. *Pennsylvania Motor Truck* arose under the Shipping Act of 1916, not the Interstate Commerce Act. But this circumstance apart, the injunction there granted in favor of one private litigant against another was to maintain the status quo pending the processing of the merits of the dispute then pending before the Federal Maritime Board.[1] In the case at bar the merits of the dispute are not pending before the Commission, and hence there is no basis for plaintiff to seek a status quo order while the dispute is being resolved in a pending administrative proceeding. Here, the Court is

asked to resolve the merits of the controversy, *i. e.*, whether the challenged transaction can be legally carried out without Commission approval and authorization.

Furthermore, in the *Pennsylvania Motor Truck* case the Court had merely to determine whether the provisions of a tariff constituted an "agreement", "modification" or "cancellation" as those terms were used in § 15 of the Shipping Act. The Court said that this determination called for no expertise on the part of the Federal Maritime Board and hence a judicial determination would not do violence to the role of the administrative agency.

In this respect the *Pennsylvania Motor Truck* case contrasts sharply with that at bar. The basic vice which plaintiff seeks protection against is Industries' obtaining "control" of Goodrich and Motor Freight without the authority and approval of the Commission. Plaintiff plants its case upon the provisions of section 5(2) and section 5(4) of the Act. The former provides:

"(a) It shall be lawful, with the approval and authorization of the Commission, as provided in subdivision (b) of this paragraph—

(i) * * * for a person which is not a carrier and which has control of one or more carriers to acquire control of another carrier through ownership of its stock or otherwise."

Section 5(2) does not state what transactions are illegal; section 5(4) does this. So far as here relevant the latter provides:

"It shall be unlawful for any person, except as provided in paragraph (2) of this section, to enter into any transaction within the scope of subdivision (a) of section (2) of this section * * * *".

Under section 5(4) the test of illegality of an unapproved and unauthorized transaction is whether the transaction is

---

1. This distinction is not to be interpreted as an approval by this Court of the granting of a status quo order in an Interstate Commerce Act case.

"within the scope of subdivision (a) of paragraph (2) of this section [5]".

The acquisition by Industries of a majority of the voting stock of Goodrich is not "within the scope of subdivision (a) of paragraph (2)" of section 5 simply because Industries owns 99 per cent of the stock of North Western and Goodrich owns all of the stock of Motor Freight. Nor does section 5(4) make such transaction unlawful, without more, absent Commission approval. The key word of section 5(2), and of section 5(4) also since it incorporates section 5(2) by reference, is "control". Unless Industries has control of North Western and obtains control of Motor Freight by its assumed acquisition of a majority of the voting stock of Goodrich, Commission approval is not required and completion of the transaction without it is unnecessary.

In the context of the Interstate Commerce Act "control" is a word of art. It is a concept with which the Commission is uniquely qualified to deal in the light of its experience in this particular area. For this reason Congress has left it to the Commission to determine whether under all of the circumstances "control" exists in a given case. In Gilbertville Trucking Co. v. United States, 371 U.S. 115, 122, 125, 83 S.Ct. 217, 222, 9 L.Ed.2d 177 (1962) the Court said:

"Section 5(4) is part of a comprehensive legislative scheme designed to place ownership, management, and operational control over common carriers within the regulatory jurisdiction of the Commission.

\* \* \* \* \* \*

We \* \* \* have left to the agency charged with enforcement the determination from the facts whether 'control' exists, subject to normal standards of review. \* \* \* In this manner, the Commission may adapt § 5(4) to the actualities and current practices of the industry involved and apply it to the extent it feels necessary to protect its jurisdiction under § 5(2) \* \* \*."

Although the question which the Court in the *Pennsylvania Motor Truck* case found (rightly or wrongly) to be within the compass of judicial authority, "control" under the Interstate Commerce Act has been held in *Gilbertville Trucking Company* to be the particular concern of the Interstate Commerce Commission.

Relying upon the *Gilbertville* case the Court in Chicago South Shore & South Bend R. v. Monon Railroad, *supra*, 235 F.Supp. at 986, said:

"That its [Congress'] intent was to create *exclusive* primary jurisdiction in the ICC in 'control' matters of this kind is abundantly clear from the statutory scheme of the Act."

■ The reasoning which led the Court in *Monon* to hold that it was without jurisdiction over the subject matter of the case before it is compelling, and supports the conclusion that this Court is without jurisdiction over the subject matter of the instant case. In the interest of brevity that reasoning is not reiterated but is accepted by this Court. A dismissal of the action for lack of subject matter jurisdiction is therefore required.

Because an appellate court may take a different view of the matter, what is said hereafter is to take care of that contingency and deals exclusively with the motion for a preliminary injunction.

### The Test for Issuing a Preliminary Injunction in the Present Case

■ A preliminary injunction will issue only upon a showing by plaintiff that it has a reasonable chance of prevailing upon final hearing, and that it will suffer irreparable injury unless temporary relief is granted. Allis-Chalmers Mfg. Co. v. White Consolidated Indus., Inc., 414 F.2d 506, 3d Cir., July 18, 1969, reversing 294 F.Supp. 1263 (D.Del.1969). Since, for the several reasons hereinafter stated, plaintiff has failed to establish that it has a reasonable chance of obtaining an injunction upon final hearing the question

of the irreparable injury will not be dealt with.

### The Administrative Action Heretofore Taken by the Commission

Even if it be assumed, arguendo, that this Court possesses jurisdiction to entertain the action, an administrative remedy was also available to plaintiff and was utilized unsuccessfully by it. Section 5(7) of the Act authorizes the Commission, upon complaint or upon its own initiative, to investigate and determine whether any person is violating the provisions of section 5(4). If, after such investigation, it makes an affirmative finding,

"it shall by order require such person to take such action as may be necessary, in the opinion of the Commission, to prevent continuance of such violation." [2]

If anyone disobeys an order designed to prevent the continuance of a violation of the Act, the Commission may resort to judicial injunctive relief under section 5(8) against the violation. That section provides:

"The district courts of the United States shall have jurisdiction upon the complaint of the Commission, alleging a violation of any of the provisions of this section or disobedience of any order issued by the Commission thereunder by any person, to issue such writs of injunction or other proper process, mandatory or otherwise, as may be necessary to restrain such person from violation of such provision or to compel obedience to such order."

Plaintiff recognized that administrative relief, under proper circumstances, was obtainable under sections 5(7) and 5(8). By a petition which plaintiff filed with the Commission on January 27, 1969, supplemented on March 7, 1969, plaintiff sought to reopen a proceeding then before the Commission, Finance Docket No. 23388, Chicago & North Western Ry. Co.-Merger, 330 I.C.C. 13 (1967), sustained, in part, sub nom., Soo Line R. Co. v. United States, 280 F.Supp. 907 (D.Minn.1968), 333 I.C.C. 236 (1968). In the supplement of March 7, 1969, plaintiff alleged that it had acquired all of the stock of Motor Freight Corporation and controlled it, that Industries owned or controlled one or more carriers within the meaning of section 5(2), and that Industries had publicly announced its intention to acquire control of Goodrich by a tender offer to its stockholders and has taken steps to that end. It then alleged:

"[B]ecause of Goodrich's ownership and control of Motor Freight, it will be unlawful for Industries, Inc. to acquire control of Goodrich, and thereby of Motor Freight, without first obtaining the approval and authorization of the Commission, pursuant to the provisions of section 5(2) and (4) of the Interstate Commerce Act."

The alternative relief sought by Goodrich was stated as follows:

"Alternatively, if it appears that Industries, Inc. intends to proceed to acquire control of Goodrich, and thereby of Motor Freight, without first obtaining the approval and authorization of the Interstate Commerce Commission, the Commission should, in the exercise of the authority conferred upon it by section 5(7) of the Interstate Commerce Act, initiate a proceeding to determine whether it should issue an order to prevent violation of the statute." [3]

---

2. While section 5(7) speaks of enforcing a violation which is a *fait accompli*, it is reasonable to attribute to the Commission the concomitant equitable power to prevent at the outset a threatened violation of a statute. This was implicitly recognized by Goodrich in the alternative relief which it hoped to obtain by its supplemental petition filed with the Commission.

3. The other relief sought by Goodrich, *i. e.*, subjecting Industries to the reporting requirement of sections 20(1) to (10) of the Act, and the security issuance requirements of sections 20a(2) to (11) of the Act need not presently be considered.

In short, Goodrich made the same claim before the Commission as it now makes, *i. e.*, that unless the transaction were authorized and approved by the Commission, the acquisition by Industries of a majority of the stock of Goodrich would violate section 5(4) of the Act.

On March 17, 1969, before the Commission acted upon the plaintiff's petition, as supplemented, Industries wrote the Commission and, after referring to Goodrich's assertion that it would be unlawful for Industries to acquire control of Goodrich without prior approval of the Commission, said:

> "[S]imultaneously with the acquisition of control of Goodrich the stock of Motor Freight would be sold, or, pending sale, complete control would be placed in an independent voting trustee."

In the same letter Industries sent the Commission a draft of an agreement which contemplated placing the stock of Motor Freight in trust, as to which Industries said:

> "Either in its present form or with such alterations or modifications as the Commission may suggest, we propose to enter into this agreement with a national bank in Washington, D. C. unaffiliated with Industries."

In its letter Industries also informed the Commission that the agreement which it enclosed "eliminates any possibility of Industries' acquiring control of Motor Freight".

On April 24, 1969, the Commission entered an order which denied Goodrich's petition, as supplemented, insofar as it prayed for an investigation by the Commission of Industries' tender and a determination whether the Commission should enter an order preventing a violation of the Act by Industries in the precise aspect now before this Court. In a preamble the order stated, "that the Commission has held that the placing of stock in an independent voting trust constitutes divestiture of control thereof, *see* Missouri Pacific Railroad Company-Control-Chicago & Eastern Illinois Railroad Co. et al., 327 I.C.C. 279."

Thus, the Commission not only denied plaintiff's request that it investigate the legality of the challenged transaction and enjoin the transaction if its lawfulness was demonstrated, its order also referred to the prophylactic effect upon "control" which would result from the trusteeing of stock under an appropriate agreement. This action at least strongly implies, if it does not conclusively indicate, that the Commission considered that if Industries acquired momentary control over Motor Freight upon the acquisition of the Goodrich stock without Commission authorization and approval, the transaction constituted at most a *de minimus* violation of § 5(4), or that the effect of such momentary control, if it existed,[4] would be simultaneously dissipated by the trusteeing of the Motor Freight stock under conditions approved by the Commission which Industries proposed.

It is not necessary to determine whether the order of the Commission is a bar to the present proceeding under the doctrine of *res judicata*, although arguably under Seatrain Lines Inc. v. Pennsylvania R. Co., 207 F.2d 255, 259 (3d Cir. 1953), this may be its effect.[5]

---

4. A preamble to the draft agreement which Industries submitted to the Commission reads:

> "WHEREAS, Industries desires, by the execution of this Agreement, to preclude itself from ever acquiring control of Motor Freight and to vest in National, as its attorney-in-fact and trustee, prior to acquisition of control of Goodrich any and all power to control Motor Freight and its operations that

Industries would otherwise acquire on acquisition of control of Goodrich;
\* \* \*"

5. In the *Seatrain Lines* case the Court said:

> "There was a contested proceeding before the Commission, with decision depending upon the present issue and the present parties taking opposite sides upon it. *Res judicata* should and does apply. (Citing cases)."

■ It is enough to note that the Commission implicitly found no reason to enjoin the transaction when it determined that there was no reason for investigating Industries' acquisition of the Goodrich stock notwithstanding the ownership by Goodrich of the stock of Motor Freight. The doctrine of primary administrative jurisdiction requires this Court to respect the administrative ruling implicit in the Commission's decision. In Seatrain Lines Inc. v. Pennsylvania R. Co., *supra*, the Court said, 207 F.2d at 260:

> "[W]e think that, once the administrative agency has made a decisive ruling defining its interest in the matter, any meaningful judicial recognition of primary administrative jurisdiction must respect the administrative ruling actually made."

■ Plaintiff argues that the doctrine of primary jurisdiction does not apply in this case when all that remains is for the Court to say what the plain words of the statute mean and whether an administrative body has acted in accordance with that meaning, relying on River Plate & Brazil Conferences v. Pressed Steel Car Co., 227 F.2d 60, 63 (2d Cir. 1955), which in turn was cited with approval in Pennsylvania Motor Truck Ass'n v. Port of Philadelphia Marine Terminal Ass'n, *supra*, 183 F.Supp. at 915. This argument rests upon a false premise. It assumes that "control" as used in sections 5(2) and (4) in the context of the Interstate Commerce Act has an inflexible meaning requiring no experience or expertise to interpret it. This is contrary to the teaching of Gilbertville Trucking Co. v. United States, *supra*, 371 U.S. at 125, 83 S.Ct. 217, 9 L.Ed.2d 177. The determination of "control" in a particular case as a practical concept is left to the I.C.C. the agency charged with enforcement. Alleghany Corp. v. Breswick & Co., 353 U.S. 151, 163, 77 S.Ct. 763, 1 L.Ed.2d 726, petition for rehearing denied, 353 U.S. 989, 77 S.Ct. 1278, 1 L.Ed.2d 1147 (1957).

The principle of primary administrative jurisdiction stated in Seatrain Lines Inc. v. Pennsylvania R. Co., *supra*, 207 F.2d at 260, makes it highly doubtful whether on final hearing this Court would enjoin Industries from obtaining "control" of Motor Freight by acquiring the Goodrich stock, when the Commission on virtually the same record this Court has before it, refused to recognize the need for any such relief.

### Whether an Injunction Should Issue Assuming Industries is About to Violate Section 5(4)

Plaintiff argues that once Industries acquires a majority of the stock of Goodrich it cannot divest itself of its alleged control of Motor Freight by placing the stock of Motor Freight in a voting trust without having control of it before the divestiture occurs. Hence, plaintiff asserts since no prior Commission approval or authorization of the transaction has been obtained or is contemplated, the acquisition violates section 5(4) of the Act regardless of any later trusteeing of the stock.

Assuming that this is true, it does not follow from this that a preliminary injunction should necessarily issue. The Commission is authorized by section 5(7) to prevent a continuance of a violation of the Act if after investigating a transaction it finds it to be violation of the law. As section 5(7) implies the Commission's power is corrective not punitive. The justification for the remedy is the removal of the violation. The Commission has discretion in formulating the remedy. Gilbertville Trucking Co. v. United States, *supra*, 371 U.S. at 129–130, 83 S.Ct. 217. In that case the Court stated that the Commission may apply the Act "to the extent it feels necessary to protect its jurisdiction under 5(2) * * *" (p. 125, 83 S.Ct. p. 224), and that the duty of the Court is to give " 'complete and efficacious effect to the prohibitions of the [Interstate Commerce Act]' with as little injury as possible to the interests of pri-

vate parties or the general public." (p. 130, 83 S.Ct. p. 226.)

Acting in accordance with these general precepts the Commission has heretofore refused to investigate Industries' proposed acquisition of the Goodrich stock and act to enjoin the consummation of the transaction if the Commission's approval is not first obtained. The Commission's action indicates that in its view the trusteeing of the Motor Freight stock under appropriate terms would be adequate to protect Goodrich and the public from any injury, even if the Act had been violated.

■■ It has been held that the creation of an independent voting trust for stock, the prior control of which without Commission approval constituted a section 5(4) violation, was effective to avoid the violation and the Commission was authorized to give it that effect. Illinois Central Railroad Company v. United States, 263 F.Supp. 421, 428 (N.D. Ill.1966); aff'd, 385 U.S. 457, 87 S.Ct. 612, 17 L.Ed.2d 509 (1967). Since the creation of an appropriate voting trust for the Motor Freight stock was in the eyes of the Commission sufficient thereafter to insulate Motor Freight from the control of Industries and to make further action by the Commission unnecessary to cure any prior violation of the Act by Industries, if any there was, no reason is apparent why this Court should take a different view of the matter. In these circumstances, the public interest in the strict enforcement of section 5(4) appears to be comparatively small, *compare* Illinois Central Railroad Co. v. United States, *supra,* p. 425, and little likelihood exists that a preliminary injunction will be issued after final hearing in the present case.

### The Threat that Section 5(4)
### Will Be Violated

■ It is fundamental to the issuance of a preliminary injunction that the act sought to be enjoined is one which is threatened. Unless an action is about to occur, or is reasonably likely to occur, the issuance of a preliminary injunction to prevent its occurrence would be an idle exercise of judicial futility.

Singularly enough, the record contains no evidence of the number of shares of Goodrich which Industries has acquired, except to show that as of April 17, 1969, Industries owned approximately 700,000 shares of Goodrich common stock purchased on the open market. This is only slightly more than 5 per cent of the 13,783,840 shares of the Goodrich common stock which were outstanding as of December 31, 1968. Whether Industries has obtained any shares pursuant to its tender, or if it has, the number which it has acquired, is not revealed by the record. Obviously, its acquisitions are not shown to be approaching the point where control of Goodrich will pass to it.

Goodrich has been in communication with its stockholders and has vigorously recommended against their acceptance of Industries' offer. Goodrich's letter of July 23, 1969, contains potent arguments, if true and not offset by countervailing considerations, why Goodrich stockholders should not succumb to Industries' blandishments. In the face of Goodrich's adverse recommendations, the Court can make no assumption that there is a likelihood that control over Goodrich and Motor Freight will pass to Industries unless a preliminary injunction issues.

From what has been said it is apparent that there is no present and immediate *danger shown by the record that* Industries' tender to acquire Goodrich stock without Commission approval will, unless enjoined, give Industries the requisite control over Motor Freight essential to a violation of section 5(4).

■ For the several reasons heretofore stated, which constitute findings of fact and conclusions of law, the motion of Goodrich for a preliminary injunction will be denied.