424 F.2d 1349
 The B. F. GOODRICH COMPANY
v.
NORTHWEST INDUSTRIES, INC., and Interstate Commerce
Commission, the B. F.Goodrich Company, a
corporation of the State of New York, Appellant.
 No. 18191.
 United States Court of Appeals, Third Circuit.
 Argued March 6, 1970.
Decided April 14, 1970.
 
 Morton Moskin, White & Case, New York City, for appellant.
 Robert G. Seaks, Wheeler & Wheeler, Washington, D.C., for appellee, Northwest Industries.
 Jerome Nelson, I.C.C., Washington, D.C., for Interstate Commerce commission.
 Before SEITZ, VAN DUSEN, and ADAMS, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 The primary issue in this case is whether a corporation whose stock is sought by a company under the jurisdiction of the Interstate Commerce Commission (Commission) may institute a private action to enjoin an alleged violation of 5 of the Interstate Commerce Act (Act), or whether it must pursue its prior complaint before the Commission and then it dissatisfied appeal the decision of the Commission to a three-judge court.
 
 
 2
 In the present suit, B. F. Goodrich Company (Goodrich) seeks in effect to enforce section 5(2) of the Act[1] by an action in the District Court of Delaware requesting an injunction to restrain Northwest Industries, Inc. (Industries) from acquiring Goodrich stock without first obtaining Commission approval, and an order declaring such action unlawful without Commission approval.[2] The basic contention in the Goodrich complaint is that control of Goodrich by Industries without Commission approval would violate section 5(2) because it would result in control of a carrier (Goodrich acquired control of a motor carrier) by a company (Industries) which is not a carrier but has control of one or more carriers.
 
 
 3
 Goodrich is a New York corporation whose stock is traded on the New York Stock Exchange. Industries, a Delaware corporation, is a conglomerate holding company whose interests include approximately 99 percent of the voting stock of Chicago & North Western Railway Company (North Western), as well as direct or indirect control of other railroads. North Western is a common rail carrier subject to the Act.
 
 
 4
 On January 20, 1969, Industries made a public announcement that it would offer to exchange certain of its securities for Goodrich stock. Goodrich sought to prevent this acquisition by filing, on January 27, 1969, a petition with the Commission for leave to intervene in the Chicago and North Western Railway Company-Merger proceeding, then pending before the Commission.[3] In the petition, Goodrich also endeavored to reopen the proceeding with the Commission, complaining that Industries should be subject to certain portions of Section 20 of the Act.[4]
 
 
 5
 On March 4, 1969, Goodrich purchased all the outstanding shares of Motor Freight Corporation, a motor carrier subject to the Act, which operates under certificates of public convenience and necessity issued by the Commission. Industries did not apply to the Commission for approval of its acquisition of the Goodrich stock, and indicated that it did not intend to do so. On March 7, 1969, Goodrich filed with the Commission its 'Supplement to Amended and Supplemental Petition', which advised the Commission of Goodrich's ownership of Motor Freight. It contended that the acquisition of Goodrich by Industries would violate section 5(2) of the Act in that a 'person (Industries) which is not a carrier and which has control of one or more carriers' would 'acquire control of another carrier' (Motor Freight) without the approval of the Commission.[5]
 
 
 6
 Industries answered, on March 10, 1969, that its acquisition of Goodrich would not violate the Act because 'simultaneously with acquisition of control of Goodrich, the stock of Motor Freight Corporation will be sold to a non-affiliated non-carrier (and) pending sale, complete control of such motor carrier will be placed in an independent voting trustee.'
 
 
 7
 The Commission issued an order, on April 24, 1969, granting Goodrich the right to intervene in the proceeding, reopening the proceeding for the 'sole purpose' of subjecting Industries to the provisions of section 20(5) of the Act and denying the petition 'in all other respects.' In the order the Commission indicated that it found Industries' plan of divestiture acceptable to preclude a violation of the Act, stating,
 
 
 8
 '* * * simultaneously with acquisition of control of B. F. Goodrich Company the stock of Motor Freight Corporation will be sold to a non-affiliated non-carrier, or, pending sale, complete control of such motor carrier will be placed in an independent voting trustee, that the Commission has held in the past that the placing of stock in an independent voting trust, with necessary restrictions, constitutes divesture of control * * *'.
 
 
 9
 On July 25, 1969, Goodrich filed a complaint in the District Court of Delaware for a declaratory judgment and injunction.[6] The Commission intervened.
 
 
 10
 Judge Steel granted the Commission's motion to dismiss the complaint, and denied Goodrich's motion for a preliminary injunction. The basis for his order was (1) lack of jurisdiction over the subject matter in that there is no private right of action for enforcement of Section 5(2) of the Act, (2) Goodrich had exhausted its administrative remedy unsuccessfully and therefore the 'doctrine of primary jurisdiction requires this Court to respect the administrative ruling implicit in the Commission's decision', and (3) there was insufficient danger of irreparable harm to Goodrich or likelihood of a violation of a statute by Industries to warrant the issuance of a preliminary injunction. (B. F. Goodrich Co. v. Northwest Industries, Inc., 303 F.Supp. 53, 60 (D.Del.1969)). Goodrich then appealed the dismissal of the complaint to this Court, but not the refusal to grant the injunction.
 
 
 11
 We agree that the District Court had no jurisdiction over the Goodrich complaint. The complaint was in substance a collateral attack on an order of the Commission and an attack on such an order may be brought only before a three-judge court convened pursuant to 28 U.S.C. 2325.[6] Venner v. Michigan Central Railroad Co., 271 U.S. 127, 46 S.Ct. 444, 70 L.Ed. 868 (1926); Lambert Run Coal Co. v. B & O Railroad Co., 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671 (1922); Suffin v. Pennsylvania Railroad Co., 396 F.2d 75, 76 (3d Cir. 1968), cert. denied, 393 U.S. 1062, 89 S.Ct. 713, 21 L.Ed.2d 705; Schwartz v. Bowman, 244 F.Supp. 51 (S.D.N.Y.1965) (extensive citations at 67), aff'd. sub nom. Annenberg v. Allegheny Corp., 360 F.2d 211 (2d Cir. 1966), cert. denied, 385 U.S. 921, 87 S.St. 230, 17 L.Ed.2d 145.
 
 
 12
 Although the Commission's order is not precisely worded, it is clear that the Commission dealt with the same contentions later made by Goodrich in the District Court. Goodrich contended in its March 7, 1969, petition before the Commission, as it did in the District Court and continues to do here, that Industries, which held 99 percent of North Western stock, was a 'person * * * which has control of one or more carriers' and since Goodrich controlled Motor Freight the acquisition of Goodrich by Industries without permission of the Commission would violate the Act. The Commission rejected such contention when it denied Goodrich's petition in all respects other than granting reopening of the proceedings for the sole purpose of subjecting Industries to Section 20(5).
 
 
 13
 The Urgent Deficiency Act, 28 U.S.C. 2321-2325,[7] sets forth the exclusive procedure for review and enforcement of Commission orders: Section 2325 requires the convening of a three-judge court before an 'injunction restraining the enforcement, operation or execution, in whole or in part, of any order of the Interstate Commerce Commission (is) granted'. The United States, by the Attorney General, is an indispensible party to such action in which the Commission or parties in interest may appear of their own motion. 28 U.S.C. 2322-2323. As in all three-judge cases, there is a direct appeal to the United States Supreme Court. 28 U.S.C. 1253. See generally Anderson, 'Judicial Review of Decisions of the Interstate Commerce Commission', 31 Geo.Wash.L.Rev. 277 (1962). Although the statutory arrangement may be criticized as cumbersome, since orders of other administrative agencies can be reviewed or enforced by a single judge in the district court, the mandate that this be the exclusive procedure of review in Commission cases must be followed until changed by Congress.[8]
 
 
 14
 The statutory procedure for review is applicable although an order is not directly attacked-- so long as the practical effect of a successful suit would contradict or countermand a Commission order. Venner v. Michigan Central Railroad, supra, Lambert Run Coal Co. v. B & O Railroad Co., supra; Simpson v. Southwestern Railroad Co., 231 F.2d 59 (5th Cir. 1956), cert. denied, 352 U.S. 828, 77 S.Ct. 41, 1 L.Ed.2d 50. See also United States v. Southern Railway Co., 380 F.2d 49, 53 (4th Cir. 1967); United States v. Southern Railway Co., 364 F.2d 86, 92 (5th Cir. 1966), cert. denied, 386 U.S. 1031, 87 S.Ct. 1479, 18 L.Ed.2d 592.
 
 
 15
 In order to circumvent the requirements of sections 2321-2325 Goodrich contends that it is not attempting to 'suspend, enjoin, annul or set aside' a Commission order, because no appealable order was issued by the Commission. As authority, it cites Pennsylvania Railroad Co. v. United States, 363 U.S. 202, 205, 80 S.Ct. 1131, 4 L.Ed.2d 1165 (1960), and State of New Jersey v. United States, 168 F.Supp. 324 (D.N.J.1958), aff'd per curiam, 359 U.S. 27, 79 S.Ct. 607, 3 L.Ed.2d 625. Neither case supports Goodrich's position.
 
 
 16
 We do not dispute the dictum relied on in Pennsylvania Railroad Company, 363 U.S. at 205, 80 S.Ct. at 1133, that 'while a mere 'abstract declaration' on some issue by the Commission may not be judicially reviewable, an order that determines a 'right or obligation' so that 'legal consequences' will flow from it is reviewable.' But we conclude, as did the Supreme Court in Pennsylvania Railroad Company, that the Commission's order met the latter standard.
 
 
 17
 The Commission's order in the present case determined that right of Industries to proceed with its acquisition of Goodrich, and it denied Goodrich the opportunity to contest this issue in a reopened proceeding. The Supreme Court has said that a permissive order as well as a mandatory one is appealable, Venner v. Michigan Central, supra; Chicago Junction case, 264 U.S. 258, 263, 44 S.Ct. 317, 68 L.Ed. 667 (1924), and has long abandoned the 'negative order doctrine'. Rochester Telephone Corporation v. United States,307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147 (1939). A refusal of the Commission to grant a rehearing may be appealed. See Atchison, Topeka & Santa Fe Railway Co. v. United States, 284 U.S. 248, 52 S.Ct. 146, 76 L.Ed. 273 (1932).
 
 
 18
 In the State of New Jersey case, the plaintiff appealed the refusal of the Commission to investigate its complaint, and the three-judge court held that 'no order of the Commission (was) complained of' and 'written notice that it would not investigate the complaint does not constitute such action as is reviewable.' The action of the Commission in the present case is not, as Goodrich contends, a 'failure to investigate'. The Commission here issued an order which, although not crystal clear, in effect sanctions Industries' plan and refuses to reopen the proceeding at Goodrich's request.
 
 
 19
 Goodrich's argument is essentially the same as that noted and rejected in Simpson v. South Western Railroad Company, supra, when Judge Little said:
 
 
 20
 'It seems to us that the appellants are here forced into the narrow position of arguing that this suit is not a suit to 'suspend, enjoin, annul or set aside' an order of the Interstate Commerce Commission because all it seeks is to suspend, enjoin, annul and set aside a course of action that the Commission order has approved and authorized.' 231 F.2d at 62.
 
 
 21
 Even if we were to hold that Goodrich's complaint is not a collateral attack on a Commission order, Goodrich's suit must be dismissed for failure to state a federal cause of action. Goodrich asserted jurisdiction under 28 U.S.C. 1337, which provides for original jurisdiction in district courts of 'any civil action or proceeding arising under any Act of Congress regulating commerce'. Although 1337 creates jurisdiction it does not create a cause of action. See Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912 (1951). Goodrich asserts a cause of action under section 5(4) of the Act,[9] which makes it unlawful for certain acquisitions enumerated in section 5(2) to take place without Commission approval. The enforcement provision for this section is contained in section 5(7) which authorizes the 'Commission * * * upon complaint or upon its own initiative without complaint * * * to investigate and determine whether any person is violating the provisions of paragraph (4)'.[10] Section 5(11) then makes the clear statement that 'The authority conferred by this section shall be exclusive and plenary'.[11] The Act therefore places sole responsibility for its enforcement on the Commission. After the Commission has issued an order, the private party who considers such order in violation of the law may seek review only in the manner set forth in28 U.S.C. 2321-2325.
 
 
 22
 The position that alone the Commission may seek judicial enforcement of section 5 is further buttressed by section 5(8) which provides: 'The district courts of the United States shall have jurisdiction upon the complaint of the Commission, alleging a violation of any of the provisions of this section * * *.'[12]
 
 
 23
 We find nothing in the Act which would authorize a private party to bring an action in a district court to enforce section 5. Any possible interpretation of the Act indicating such a cause of action would be at war with the statutory scheme vesting responsibility for the operation of common carriers with the Commission. See Gilbertville Trucking Co., Inc. v. United States, 371 U.S. 115, 83 S.Ct. 217, 9 L.Ed.2d 177 (1962). The acquisitions and combinations prohibited by section 5(4) are lawful with Commission 'approval'; the Commission is authorized to approve such acquisitions on terms it finds 'just and reasonable'. Section 5(2)(b). As Mr. Justice Black stated in Seaboard Air Line Railroad Co. v. Daniel, 333 U.S. 118, 125, 68 S.Ct. 426, 92 L.Ed. 580 (1948): 'By 5(11) of the Interstate Commerce Act * * * Congress granted the Commission 'exclusive and plenary' authority in refusing or approving railroad consolidations, mergers, acquisitions, etc. The breadth of this grant of power can be understood only by reference to 5(2)(b) which authorizes the Commission to predicate its approval upon 'such terms and conditions and such modifications as it shall find to be just and reasonable".
 
 
 24
 Congress clearly placed complete initial control of acquisitions involving federally regulated carriers in the Commission. Any private party injured by a violation of the Act must seek remedial relief from the Commission. Such party must obtain an order from the Commission which may be reviewed only pursuant to 28 U.S.C. 2321-2325. This interpretation is consistent with the decision in Neisloss v. Bush, 110 U.S.App.D.C. 396, 293 F.2d 873, 878 (1961). There, Mr. Justice Reed, sitting by designation, dismissed the complaint for failure to state a cause of action where stockholders who attacked their corporation's acquisition of the New York Central contended that the transaction violated Section 5. Justice Reed stated: 'There is nothing in the statute or its history to indicate that Congress, in enacting 5(2), meant to authorize an original action in the district court, and that it took the extraordinary step of bypassing its expert agency in the matters here involved. These matters call for the exercise of discretion and the practical application of the Commerce Act.'
 
 
 25
 Goodrich seeks to distinguish Neisloss from the present case on the basis that Neisloss involved a factual determination on which the Commission had expertise, whereas its own complaint may be adjudicated solely as an issue of law, a matter in which the courts are the experts. In view of the language of section 5, this distinction is not tenable.
 
 
 26
 Two district courts which have considered the issue of a private right of action under section 5 have reached contrary results. Most v. Allegheny Corp. (S.D.N.Y., No. 66 Civ. 962, February 17, 1970), heavily relied on by Goodrich at oral argument, decided inter alia that a private cause of action for enforcement of section 5(2)(b) may be brought under the jurisdiction of 28 U.S.C. 1337.[13] Judge Wyatt said: 'The purpose of Section 5(11) is not to limit the jurisdiction of this Court but to make clear that a transaction authorized by the Commission can be carried into effect without regard to state or municipal law or to any other federal statute.' Although one aspect of 5(11) is to immunize parties who comply with Commission orders from violations of state and municipal laws (see e.g. Seaboard Air Line, supra), the language when construed in the context of the other provisions of section 5 is not limited to that interpretation. We therefore disagree with the decision in Most-- a decision significantly made without benefit of Commission participation.
 
 
 27
 Chicago, South Shore & South Bend Railroad v. Monon Railroad, 235 F.Supp. 984 (N.D.Ill.1964), is in direct conflict with Most. In Monon, the court dismissed a complaint seeking an injunction against an acquisition alleged to have violated section 5. One of the reasons set forth in the opinion which concluded that there is no private cause of action under section 5, was the need for the Commission's expertise. Goodrich attempts to distinguish Monon, as did the court in Most, on the ground that in Monon there was an issue whether 'control' would be achieved. Admittedly there is no dispute regarding the meaning of control in the present case. There is, however, a question whether Industries' plan for divestiture removes it from the prohibition of the Act. There is no real distinction between these two issues. Both concern a question of statutory construction rather than a question of fact.
 
 
 28
 Goodrich seeks to justify its position that there is an implied private cause of action for enforcement of section 5 by directing attention to decisions in which courts have inferred a private cause of action from statutes which do not specifically set forth such action. The only Supreme Court case Goodrich cites is J. I. Case v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Section 27 of the Securities Exchange Act of 1934, construed in Borak, is clearly not analogous to Section 5 of the Interstate Commerce Act. As stated in Borak; 'section 27 specifically grants the appropriate District Courts jurisdiction over 'all suits in equity and actions at law brought to enforce any liability or duty created' under the (Securities Exchange) Act.' 377 U.S. at 431, 84 S.Ct. at 1559. In contrast, the jurisdiction portion of Section 5 of the Interstate Commerce Act, Section 5(8), is not silent on the question of jurisdiction; it specifically gives the district courts jurisdiction 'upon the complaint of the Commission, alleging a violation' of Section 5. Thus, the analogy of the Securities Exchange Act of 1934 may not be aptly drawn.[14] (Emphasis added).
 
 
 29
 Although not raised by either party there is some question regarding the standing of Goodrich to bring an action enforcing the Act or to appeal the order of the Commission. In view of our decision that there is no private right of action to enforce Section 5 of the Interstate Commerce Act, it is unnecessary to consider who could bring such cause of action if one existed. Goodrich's standing to contest the order of the Commission in a three-judge court should, in the first instance, be decided by the district court if such suit is brought.
 
 
 30
 There is also a question whether this particular proceeding is moot inasmuch as Industries' tender offer has by its terms now terminated. Since none of the parties wish to press this point, and in view of the fact that Industries has indicated that it may, in the near future, proceed with a new tender offer, we do not at this stage decline jurisdiction because of mootness.
 
 
 31
 Finally, because of our disposition of the case it is unnecessary that we address ourselves to the application of the doctrine of primary jurisdiction as discussed by Judge Steel and pressed by the parties in this appeal. 303 F.Supp. at 60. For a discussion of the application of the doctrine of primary jurisdiction to the Interstate Commerce Commission in this Circuit, see Seatrain Lines Inc. v. Pennsylvania Railroad Co., 207 F.2d 255 (3d Cir. 1953).
 
 
 32
 An order will be entered affirming the dismissal of the complaint.
 
 
 
 [1]
 Section 5(2)(a)(i), 49 U.S.C. 5(2)(a)(i) provides in pertinent part: 'It shall be lawful, with the approval and authorization of the Commission * * * for a person which is not a carrier and which has control of one or more carriers to acquire control of another carrier * * *;'
 
 
 [2]
 Jurisdiction is asserted pursuant to 28 U.S.C. 1337. Relief was sought pursuant to 28 U.S.C. 2202, 2201
 
 
 [3]
 Chicago and North Western Railway Co.-Merger-Chicago Great Western Railway Co., Fin. Docket No. 23388
 
 
 [4]
 Section 20, 49 U.S.C. 20, requires certain carriers to make reports or submit records or accounts to the Commission
 
 
 [5]
 49 U.S.C. 1(3)(b), provides: 'For the purposes of sections 5, * * * of this title, where reference is made to control (in referring to a relationship between any person or persons and another person or persons), such reference shall be construed to include actual as well as legal control, whether maintained or exercised through or by reason of the method of or circumstances surrounding organization or operation, through or by common directors, officers, or stockholders, a voting trust or trusts, a holding or investment company or companies, or through or by any other direct or indirect means; and to include the power to exercise control.'
 
 
 [6]
 On May 21, 1969, the United States Government had filed a complaint against Industries alleging that the consummation of an exchange offer by Industries would violate the Clayton Act. The Government also sought injunctive relief. On July 11, 1969, District Judge Will denied the Government's motion, but entered an order which provided that if Industries proceeded with its acquisition proposal it was to maintain Goodrich as a separate viable going concern. United States v. Northwest Industrict, 301 F.Supp. 1066 (N.D.Ill.1969)
 6A There are some limited exceptions to this procedure. See e.g. United States v. Interstate Commerce Commission, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949); Chicago & North Western Ry. v. United States, 52 F.Supp. 65, 67 (N.D.Ill.1943), aff'd per curiam, 320 U.S. 718, 64 S.Ct. 369, 88 L.Ed. 422 (1943).
 
 
 [7]
 2321. The procedure in the district courts in actions to enforce, suspend, enjoin, annul or set aside in whole or in part any order of the Interstate Commerce Commission * * * shall be as provided in this chapter
 2322. All actions specified in section 2321 of this title shall be brought by or against the United States.
 2323. The Attorney General shall represent the Government in the actions specified in section 2321 * * * in the district courts, and in the Supreme Court of the United States upon appeal from the district courts.
 The Interstate Commerce Commission and any party or parties in interest to the proceeding before the Commission, in which an order or requirement is made, may appear as parties of their own motion and as of right * * *.
 2324. The pendency of an action to enjoin, set aside, annul, or suspend any order of the Interstate Commerce Commission shall not of itself stay or suspend the operation of the order, but the court may restrain or suspend, in whole or in part, the operation of the order pending the final hearing and determination of the action.
 2325. An interlocutory or permanent injunction restraining the enforcement, operation or execution, in whole or in part, of any order of the Interstate Commerce Commission shall not be granted unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.
 
 
 [8]
 An amendment to the Act has been submitted to Congress by the Justice Department which would abolish the three-judge procedure for review of Commission orders
 
 
 [9]
 49 U.S.C. 5(4): It shall be unlawful for any person, except as provided in paragraph (2), of this section, to enter into any transaction within the scope of subparagraph (a) thereof, or to accomplish or effectuate, or to participate in accomplishing or effectuating, the control of management in a common interest of any two or more carriers, however such result is attained, * * *'
 
 
 [10]
 49 U.S.C. 5(7)
 
 
 [11]
 49 U.S.C. 5(11)
 
 
 [12]
 49 U.S.C. 5(8)
 
 
 [13]
 In support of its decision, the court in Most said that Mississippi River Fuel Corp. v. Slayton, 359 F.2d 106, 114 (8th Cir. 1966) makes a similar construction of Section 5(11). However, such construction is far from clear since the court in Mississippi River Fuel recognized that the 'merits or demerits and the fairness or unfairness of a proposed railroad consolidation are not, in the first instance, matters for our jurisdiction or our concern, or for the jurisdiction or concern of the district court.' 359 F.2d at 113. Mississippi River Fuel was reversed on other grounds, sub nom. Levin v. Mississippi River Fuel Corp., 386 U.S. 162, 87 S.Ct. 927, 17 L.Ed.2d 834 (1967)
 
 
 [14]
 Wills v. Trans World Airlines, Inc., 200 F.Supp. 360 (S.D.Cal.1961), cited by Goodrich, which sustained a private cause of action for damages for violation of an anti-discrimination section of the Civil Aeronautics Act, 49 U.S.C. 1374(b), is not apposite in view of the specific statutory scheme of 5 of the Interstate Commerce Act. Goodrich also cites Pennsylvania Motor Truck Ass'n v. Port of Philadelphia Marine Term Ass'n., 183 F.Supp. 910 (E.D.Pa.1960) which granted an injunction against certain actions of the defendant alleged to have violated the Shipping Act of 1916 pending a determination by the Federal Maritime Board of the plaintiffs' complaint. Because of the factual and statutory distinctions between that case and the present one, it does not effect our decision