**ALABAMA ELECTRIC COOPERATIVE, INC., a corporation, and Alabama River Pulp Company, Inc., a corporation, Plaintiffs,**

Alabama Public Service Commission, Billy Joe Camp, as President, Lynn Greer and Jim Folsom, Jr., Associate Commissioners of the Alabama Public Service Commission, The State of Alabama, Charles A. Graddick, Attorney General of the State of Alabama, and National Association of Regulatory Utility Commissioners, Plaintiff-Intervenors,

v.

**UNITED STATES of America and Interstate Commerce Commission and Southern Railway Company and Burlington Northern Railroad Company (formerly St. Louis-San Francisco Railway Company), Defendants,**

Association of American Railroads, Defendant-Intervenor.

Civ. A. No. 81–619–N.

United States District Court, M.D. Alabama, N.D.

July 13, 1983.

Wayne P. Turner and Terry P. Wilson, Turner, Wilson, Christian & Dorrough, Montgomery, Ala., for plaintiff-intervenors.

Paul Rodgers, Charles D. Gray, Deborah A. Dupont, Washington, D.C., for Nat. Ass'n of Regulatory Utility Com'rs.

Robert S. Burke, Acting Gen. Counsel, Kathleen M. Dollar, Associate Gen. Counsel, Lawrence H. Richmond, J. Paul McGrath, Washington, D.C., John C. Bell, U.S. Atty. and Kenneth E. Vines, Asst. U.S. Atty., M.D. Alabama, Montgomery, Ala., Kathryn Ferger, Barbara S. Woodall and Sandra M. Schraibman, U.S. Dept. of

Justice, Washington, D.C., for defendants U.S. and I.C.C.

Vernon L. Wells, II, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, Ala., Betty Jo Christian, Stephen Ailes, Steven Reed and Kenneth Winer, Steptoe & Johnston, Washington, D.C., Curtis H. Berg, St. Paul, Minn., and William H. Teasley, Washington, D.C., for defendants Southern Ry., Burlington Northern and Ass'n of American Railroads.

OPINION

MYRON H. THOMPSON, District Judge.

At issue in this lawsuit—seeking declaratory relief, 28 U.S.C.A. § 2201, and invoking this court's general subject matter jurisdiction, 28 U.S.C.A. § 1331—are, first, the statutory validity of regulatory decisions, affecting commercial railway traffic, of the Interstate Commerce Commission of the United States (ICC) and the Alabama Public Service Commission (APSC); and, second, the constitutionality of various provisions of the Staggers Rail Act of 1980. The plaintiffs may be divided into two groups: the *private plaintiffs* consisting of Alabama Electric Cooperative, Inc. and Alabama River Pulp Company, Inc.; and the *state plaintiffs* consisting of the APSC, the president and two associate members of the APSC, the State of Alabama and its Attorney General, and the National Association of Regulatory Utility Commissioners (NARUC), a quasi-governmental nonprofit organization whose membership consists of governmental officials, engaged in the regulation of utilities and carriers, from the 50 states, the District of Columbia, Guam, Puerto Rico, and the Virgin Islands. *See* 49 U.S.C.A. §§ 10344(f), 11506; NARUC's February 9, 1982, motion for leave to intervene. The defendants are the ICC, the United States of America, Southern Railway Company, Burlington Northern Railroad Company, and the Association of American Railroads.

Now before the court are the defendants' motions to dismiss. For reasons which follow the motions are due to be granted in part and denied in part.

I. BACKGROUND

On October 14, 1980, in order to revive the country's rapidly deteriorating rail industry, the Staggers Rail Act was enacted. The Act, which amended the Revised Interstate Commerce Act, 49 U.S.C.A. §§ 10101, *et seq.*, substantially reformed governmental regulation of railroads.[1] The events giving rise to this lawsuit center around the enactment of the Staggers Rail Act and, as set out below, are divided between those events predating and those postdating the enactment of the Act.

A. Events Predating the Enactment of the Staggers Rail Act

In December 1978 the ICC raised interstate railroad rates across-the-board, including a 13% rise for interstate coal movements within the South. When the defendant railroads, Southern Railway Company and Burlington Northern Railroad Company, asked the APSC to apply the 13% increase to intrastate coal shipments in Alabama, the APSC approved the increase for all intrastate coal traffic except that tendered in multiple car lots of ten or more, which were held down to an 8% increase. Under the law as it then stood, the APSC's decision could be successfully appealed to the ICC only if the defendant railroads could prove that the holddown to 8% unreasonably discriminated against or placed a burden upon interstate commerce. 49 U.S.C.A. § 11501(a) (West Supp.1979). The defendant railroads, however, did not appeal the APSC's decision. They implemented the rate level by filing appropriate tariffs with the APSC.

B. Events Postdating the Enactment of the Staggers Rail Act

On October 14, 1980, with the enactment of the Staggers Rail Act, state jurisdiction

---

1. For the legislative history of the Staggers Rail Act, P.L. 96–448, *see* 1980 Code Cong. & Admin. News, pp. 3978, *et seq.*

over general rate increases for intrastate traffic was removed. 49 U.S.C.A. § 11501(b). In response to the Act, the defendant railroads asked the ICC for special permission to file a supplement to apply the earlier 13% increase to Alabama intrastate shipments across-the-board and, thereby, to shipments of coal tendered in multiple car lots of ten or more. The ICC granted the defendant railroads' request, and the defendant railroads published two supplemental tariffs implementing the 13% increase to intrastate traffic in Alabama across-the-board.

The defendant railroads also sent copies of the supplemental tariffs to the APSC. The APSC rejected or suspended the two tariffs and instituted an investigation. The defendant railroads, nevertheless, sought payments at the 13% increase level for intrastate shipments of coal in multiple car lots of ten or more. The plaintiffs Alabama Electric Cooperative, Inc. and Alabama River Pulp Company, Inc., however, continued to pay the defendant railroads at the level established by the APSC prior to the enactment of the Staggers Rail Act.

This lawsuit then ensued.

## II.

The plaintiffs, both state and private, seek a declaration that the defendant railroads are statutorily obligated, under the Staggers Rail Act, to comply with the APSC decision suspending the two supplemental tariffs; they contend that the ICC lacked the power, under the Staggers Rail Act, to authorize the publication of the two supplemental tariffs. More specifically the plaintiffs contend that the two supplemental tariffs were not in fact supplemental tariffs and general rate increases, but rather were new tariff filings on a specific commodity, and that the two tariffs there-

fore fell within the jurisdiction of the APSC, not the ICC.

The plaintiffs also seek a declaration that various provisions of the Staggers Rail Act are in violation of the U.S. Constitution. They contend that sections 201,[2] 202,[3] and 203[4] of the Act are violative of the due process clause of the fifth amendment. These sections, in general, remove from governmental regulation those railrates of rail carriers that do not have "market dominance," as that term is defined in the sections. The plaintiffs also contend that section 214[5] of the Act is violative of the commerce clause and the tenth amendment. Section 214, among other things, prohibits states from exercising any regulatory jurisdiction over general rate increases for intrastate railrates and requires that states exercise such authority as they may exercise exclusively in accordance with the standards and requirements of the Revised Interstate Commerce Act, 49 U.S.C.A. §§ 10101, *et seq.*, as revised by the Staggers Rail Act.

The defendants contend by their motions to dismiss that this court is without jurisdiction to consider the plaintiffs' request for declaratory relief. The statutory provision governing judicial review of ICC actions is 28 U.S.C.A. § 2321(a),[6] which provides:

> Except as otherwise provided by an Act of Congress, a proceeding to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Interstate Commerce Commission shall be brought in the court of appeals as provided by and in the manner prescribed in chapter 158 of the title.

And 28 U.S.C.A. § 2342 of chapter 158 provides in part:

> The court of appeals ... has exclusive jurisdiction to enjoin, set aside, suspend

---

**2.** Codified as 49 U.S.C.A. § 10701a.

**3.** Codified as 49 U.S.C.A. § 10709.

**4.** Codified as 49 U.S.C.A. § 10707a.

**5.** Codified as 49 U.S.C.A. § 11501.

**6.** Section 2321 contains certain limited exceptions to judicial review in the courts of appeals. The exceptions are not applicable to the present case.

(in whole or in part), or to determine the validity of—

\* \* \* \* \* \*

... all rules, regulations, or final orders of the Interstate Commerce Commission made reviewable by section 2321 of this title....

With the enactment of the above provisions in 1975, Congress eliminated the three-judge district court procedure for review of ICC actions and transferred that jurisdiction to the court of appeals. *Assure Competitive Transportation, Inc. v. United States,* 629 F.2d 467, 470 n. 3 (7th Cir.1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981).

 "[A] special statute vesting jurisdiction in a particular court cuts off the jurisdiction other courts might otherwise have under a more general statute." *Id.,* 629 F.2d at 471. *Whitney National Bank v. Bank of New Orleans,* 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965); *Coca Cola Co. v. FTC,* 475 F.2d 299, 302 (5th Cir. 1973), *cert. denied,* 414 U.S. 877, 94 S.Ct. 121, 38 L.Ed.2d 122 (1973). Therefore, sections 2321(a) and 2342's vesting of judicial review of ICC actions in the courts of appeals exclusively cuts off any jurisdiction this court might otherwise have had under such general jurisdictional provisions as 28 U.S.C.A. §§ 1331, 1337. *Denberg v. United States,* 696 F.2d 1193 (7th Cir.1983); *Assure Competitive Transportation, Inc. v. United States, supra; Toye Bros. Yellow Cab Co. v. Irby,* 437 F.2d 806 (5th Cir.1971); *B.F. Goodrich Co. v. Northwest Industries, Inc.,* 424 F.2d 1349 (3rd Cir. 1970), *cert. denied,* 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970). And "[c]onfining judicial review to the courts of appeals is not some mindless, irksome technicality that we should try to construe our way around. It is the use of the district courts to review administrative action that does not make sense when there is review jurisdiction in the courts of appeals." *Denberg v. United States, supra,* 696 F.2d at 1196.

Also, the appellate courts' exclusive jurisdiction in sections 2321(a) and 2342 includes both statutory and constitutional challenges to ICC actions. See, *e.g., Denberg v. United States, supra; Assure Competitive Transportation, Inc. v. United States, supra.* While "an agency may not finally decide the limits of its ... power, ... this is not a case where the agency is the final arbiter, because here review is available in a court of appeals." *Assure Competitive Transportation, Inc. v. United States, supra,* 629 F.2d at 471.

In the present case, the plaintiffs seek a declaration that the defendant railroads should comply with the APSC decision, not the ICC decision, regarding the rate increase for intrastate shipments of coal tendered in car lots of ten or more. The plaintiffs contend that the issue presented falls outside the exclusive jurisdiction of the appellate court because it is an APSC decision, not an ICC decision, which is primarily at issue. Their contention is without merit. For, in order for this court to determine whether the plaintiffs are entitled to the declaratory relief requested, this court would perforce have to address the validity of the ICC decision. That is, for this court to hold the APSC decision valid, it would have to hold the ICC decision invalid; and vice versa. Therefore, the plaintiffs' request for a declaration on the validity of the APSC decision "is essentially one to annul or set aside the order of the [ICC]. While the [request] does not expressly pray that the order be annulled or set aside, it does assail the validity of the order and pray that the defendant company be enjoined from doing what the order specifically authorizes, which is equivalent to asking that the order be adjudged invalid and set aside." *Venner v. Michigan Central Railroad,* 271 U.S. 127, 130, 46 S.Ct. 444, 445, 70 L.Ed. 868 (1926). The plaintiffs' request for such declaratory relief is, therefore, exclusively within the jurisdiction of the appellate courts.[7]

Furthermore, the *private* plaintiffs' constitutional challenge to the various provi-

---

**7.** The plaintiffs note that the Supreme Court has substantially limited the authority of courts of appeals to review ICC suspension orders. *In re*

*Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 638–39 n. 17, 98 S.Ct. 2053, 2058–59 n. 17, 56 L.Ed.2d 591 (1978). To the extent the Supreme

sions of the Staggers Rail Act is exclusively within the jurisdiction of the courts of appeals. The private plaintiffs' constitutional challenge is totally derivative of their challenge to the validity of the ICC and APSC decisions. Without these decisions they would not have a justiciable controversy. And, as already noted, constitutional challenges to the validity of ICC actions are exclusively within the jurisdiction of the courts of appeals.

However, the *state* plaintiffs' constitutional challenge is properly before this court. Their challenge, unlike that of the private plaintiffs, is not necessarily rooted in any decision of the ICC. That is, had the ICC and the APSC not rendered their decisions, the state plaintiffs would still have justiciable claims; their claims are not necessarily such as would be initially presented to the ICC and ultimately reviewed by the appellate courts.[8]

An appropriate order will be entered in accordance with this opinion.

Court has limited appellate review in such instances, it is also clear that the Court did not intend to reinvest such review authority in district courts. *Id.*

**8.** The state plaintiffs are intervenors in this lawsuit. In this circuit a plaintiff-intervenor with a jurisdictional basis independent of the original plaintiffs, as the state plaintiffs have in the present lawsuit, may continue to litigate after dismissal of the original plaintiffs. *Magdoff v. Saphin Television & Appliance, Inc.*, 228 F.2d 214 (5th Cir.1955); *Hunt Tool Company v. Moore, Inc.*, 212 F.2d 685 (5th Cir.1954). *See, McKay v. Heyison*, 614 F.2d 899 (3rd Cir.1980); *United States Steel v. Environmental Protection Agency*, 614 F.2d 843 (3rd Cir.1979); 7A C. Wright & A. Miller, Federal Practice and Procedure § 1920, p. 613 & n. 19 (1972).